Cause No. **5-24CV-069-H**

### United States District Court
### Northern District of Texas
### Lubbock Division

MAR 7 2024 AM 8:30
FILED - USDC - NDTX - LU

### Complaint 42 U.S.C. § 1983

### Lonnie Kade Welsh Plaintiff

v.

### Management and Training Corporation et al, Defendant

## I.    Complaint

Come Now the Plaintiff, Lonnie Kade Welsh, files this action against named Sergio Molina in his official capacity as primary agent of Management and Training Corporation and Management and Training Corporation  in its individual capacity;  Wayne Schmoker in his official and individual capacity; Adam Pierce in his individual; Lisa Peralta in her individual capacity, Sahar Sooter in her individual capacity; Kevin Winslow in his individual capacity; James Winckler in his individual capacity; S. Murphree in his individual capacity, Zachary Salavar in his individual capacity, Anthony Frasier in his individual capacity, Dayton Saenz in his individual capacity; Ricardo Nipper in his individual capacity, Tylor Swanger in his individual capacity, Unknown First Name Cruz (night shift) in his individual capacity; James Cruz in his individual capacity; Joseph Trevino in his individual capacity; Michael Perez in his individual capacity; Unknown First Name Titus in his individual capacity; Xavier Guzman in his individual capacity;

S. Carrizales in his individual capacity; Juan Rodriguez in his individual capacity; Unknown First Name Williams in his individual capacity; Lewis Rayos in his individual capacity, Ashley Batista in his individual capacity, Darla Jennings in her individual capacity; Unknown first name  Savala in his individual capacity; Jimmy Renfro in his individual capacity; A. Sierra in his individual capacity; Chapo Rodriguez in his individual capacity; Candy Weaver; Willie Barbosa in his individual capacity;  Havier Ramierez in his individual capacity;  Unknown first name Angelina Johnson in her individual capacity; Unknown name McMullen; Unknown first name Solis in his individual capacity;  Unknown first name Pittock in his individual capacity; Robert Brunslow in his individual capacity; Unknown first name D. Selby in his individual capacity; Darla Jennings in her individual capacity; Unknown First name Villarreal in his individual capacity; Unknown First name Loyden in his individual capacity; A. Sanchez in his individual capacity; Willie Barbosa in his individual capacity; Ester Ortiz in his individual capacity; Unknown First name Follower in her individual capacity; Unknown First name Settles in her individual capacity; Emma Hinojosa in his individual capacity; James Pearson in his individual capacity; Kendrick Fennel in his individual capacity; Candy Weaver in her individual capacity, Unknown first name Correa in her individual capacity Unknown first name Thorne in his individual capacity, Unknown first name Nurse Martinez in her individual capacity; Unknown first name Valenzuela her individual capacity Unknown first name Nurse Barragan in her individual capacity, Unknown first name Richardson in his individual capacity; Ricardo Nipper in his individual capacity; Tiffany Graves in her individual capacity; Unknown First name Turner in his individual capacity; Chris Greenwalt in her individual capacity; Jose Cardenas in his individual capacity; Unknown first name Hodge; Known first name Cruz;  Jose Ramirez; Val Gurrerro; Rebecca Lang in her individual capacity; Marsha McLane in her individual capacity; Jessica

Marsh in her individual capacity; Unknown first name Clum; Janet Carpenter in her individual capacity;  M. Sandoval in her individual capacity. Jacquelyn Wilson in her individual capacity.; Kara Gougler in her individual capacity Unknown first name Jeroldo and Stetson Fisher in his individual capacity.

## II.    **Introduction**

1.This is an action brought pursuant to, inter alia 42 U.S.C. 1983, alleging violation inter alia of the Thirteenth and Fourteenth Amendment to the Constitution of the United States of America and various State of Texas Tort claims.

2.     At all relevant times Lonnie Kade Welsh is civilly committed at the Texas Civil Commitment Center (henceforth TCCC) under the Sexually Violent Predator Act Texas Health and Safety Code 84l(henceforth THS) at 2600 South Sunset Avenue, Littlefield, Texas 79339.

3.     At all relevant times the Texas Civil Commitment Office (henceforth TCCO) is responsible for the care of Lonnie Kade Welsh under the THS 841 at 4616 W. Howard Ln. Bldg. 2, Ste. 350 Austin, TX 78728.

4.     At all relevant times Marsha McLane who is the Director of the Agency Texas Civil Commitment Office(TCCO) who  controls the security contractor for the Texas Civil Commitment Center (TCCC), Management and Training Corporation by setting policies through Jessica Marsh the Assistant Director for the TCCO.

### III.   <u>Venue and Jurisdiction</u>

5.    This Court has subject matter jurisdiction over the Plaintiffs Federal Constitutional claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332  and 28 U.S.C. § 2201.

6.    Venue is proper in the Lubbock Division of the Federal District Court for the Northern District of Texas pursuant to 28 U.S.C. §§ 124 and 1391 as the events giving rise to the claims herein occurred in the City of  Littlefield Texas in Lubbock County and is thus within the court's jurisdiction.

### IV.   <u>Parties</u>

7.    At all relevant time Welsh is civilly committed at the Texas Civil Commitment Center in Littlefield, Texas 79339 under Texas Health and Safety Code 841.

8.    Defendant Janet Carpenter  in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

9.Defendant Unknown name male (nightshift) Sanchez his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

10.    Defendant Chris Greenwalt acted under the color of state law as a case manager for the Texas Civil Commitment Office and is being sued in her individual capacity and official can be served at the Texas Civil Commitment Center 2600 South Sunset Ave., Littlefield, Tx 79339.

11.    Defendant Derek Porter acted under the color of state law was the compliance coordinator for the Texas Civil Commitment Office individual capacity for damages can be served at 4616 West Howard Ln. Bld. 2, Suite 350, Austin Tx. 78728.

12.    Defendant Kendrick Fennel in his individual capacity Greenwalt acted under the color of state law as a case manager for the Texas Civil Commitment Office and is being sued in his individual capacity and official can be served at the Texas Civil Commitment Center 2600 South Sunset Ave., Littlefield, Tx 79339.

13.    Unknown first name Clum n his individual capacity Greenwalt acted under the color of state law as a case manager for the Texas Civil Commitment Office and is being sued in his individual capacity and official can be served at the Texas Civil Commitment Center 2600 South Sunset Ave., Littlefield, Tx 79339.

14.    Havier Ramirez in  his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

15.     Defendant Management and Training Corporation acts under the color of state law under the governmental function test operating under contract the Texas Civil Commitment Center naming Sergio Molina and Wayne Schmoker as the principle agent for the corporation in the State of Texas. Sergio Molina represents the corporation as the senior vice president at 500 North Market Place Drive Centerville, UT 84014 Wayne Schmoker, John Cochran and Greg Shirley are or were the Facility Administrators at the Texas Civil Commitment Center at 2600 South Sunset Ave. Littlefield, Tx. 79339.

16.     Defendant Adam Pierce in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

17.     Sergio Molina in his official capacity acting under color of state law as principle agent in the State of Texas for MCT who can be served at 500 North Market Place Drive Centerville, UT 84014

18.     Wayne Schmoker in his official and individual capacity acting under color of state law as principle agent in the State of Texas for MCT who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

19.     John Powel in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

20.     Angelina Johnson in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

21.     Lisa Peralta acted under the color of state law as a case manager for the Texas Civil Commitment Office and is being sued in her individual capacity and can be served at the Texas Civil Commitment Center 2600 South Sunset Ave., Littlefield, Tx 79339.

22.     Sahar Sooter in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

23.     Kevin Winslow in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

24.     James Winckler in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

25.     S. Murphree in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

26.     Zachary Salavar in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

27.     Unknown First name Anthony Frasier in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

28.     D. Saenz in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

29.     Ricardo Nipper in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

30.     Tylor Swanger in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

31.     Unknown First Name Cruz (night shift) in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

32.     J. Cruz (day shift) in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

33.    James Cruz in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

34.    Joseph Trevino in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

35.    Michael Perez in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

36.    Unknown First Name Titus in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

37.    Xavier Guzman in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

38.    S. Carrizales in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

39.    Juan Rodriguez in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

40.    Unknown First Name Williams in his individual capacity who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

41.    Val Gurrerro in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

42.    Lewis Rayos in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

43.    Ashley Batista in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

44.    Darla Jennings, in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

45.    Unknown first name Savala in his individual capacity  acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

46.    Jimmy Renfro in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

47.    Unknown First Name Sierra in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

48.    Chapo Rodriguez in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

49.    Unknown first name Villarreal in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

50.    Unknown first name Lorden in his individual capacity acting under color  of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

51.    Unknown first name Jeroldo in hisindividual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

52.    Willie Barbosa in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

53.     Ester Ortiz in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

54.     Unknown first name Follower in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

55.     Unknown first name Settles in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

56.     Emma Hinojosa in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

57.     James Pearson in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

58.     Stetson Fisher in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

59.     F. Lewis in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

60.     Sean Casey in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

61.     Candy Weaver in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

62.     Unknown first name Correa in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

63.     Unknown first name Thorne in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

64.     Unknown first name Nurse Martinez in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

65.     Unknown first name Nurse Barragan in her individual capacity acting under color of state law as an employee and head of medical of the Management and

Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

66.     Unknown first name Richardson in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

67.     Ricardo Nipper in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

68.     Unknown first name Turner in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

69.     Jose Cardenas in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

70.     Unknown first name Hodge in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

71.     Unknown first name McMullen in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

72.     Rebecca Lang in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

73.     Unknown M. Sandoval in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

74.     Jose Solis in his individual capacity in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

75.     Unknown first name Pittock in his individual capacity in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

76.     Robert Brunslow in his individual capacity in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

77.     Unknown first name D. Selby in his individual capacity in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

78. Jacquelyn Wilson in her individual capacity in her individual capacity in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

## V. Facts

79.     On or about. May 13, 2022 Kendrick Fennel a Texas Civil Commitment Office case manager (TCCO) did request MTC chief of security James Winckler to place Welsh in solitary confinement because Welsh told him what, what do you mean by that and Fennel did not like Welsh's tone.

80.     Winckler then ordered  Cpt. Pearson a MTC security supervisor to place Welsh in restraints and escort him to the solitary confinement section called SMU.

81.     Everyday other residence who are civilly committed the same as Welsh have a tone of voice that TCCO and MTC staff finds offensive.

82.     These other residence are not placed in solitary confinement.

83.     On May 31, 2022 during a verbal disagreement with MTC security Jose Cardenas who did interrupt Welsh treatment season with his therapist Rebecca Lang Winkler did order Pearson to use chemical agents against Welsh.

84.    The use of chemical agents which is considered a deadly weapon under State and federal law was used against Welsh without warning by Pearson. See U.S.S.G. § 2B3.1(b)(2)(E) and Texas Penal Code 46.01(14) and Sec. 46.05(a)(3)

85.    Person never gave any verbal commands to surrender or any warning but did hide the chemical spray behind his back came within 10 feet of Welsh and sprayed him in the face and eyes with the chemical agent.

86.    Then D. Saenz; Chapo Rodriguez, and Jose Cardenas took Welsh to the ground without warning, and shoved his head into the ground.

87.    Welsh was injured in his back that tightened up on him later that day making him bed ridden for days after.

88.    Welsh suffered chemical burns on his body, temporarily lost his eye sight, and could not breath for several seconds making him think he is going to die.

89.    Welsh initially refused medical because he felt only the chemical burns which he was instructed to decontaminate inside his cell.

90.    Welsh did not feel the back pain at first due to his adrenaline pumping through his body.

91.    When Welsh returned to the cell Winckler ordered staff to turn off the water before Welsh arrived back into the cell and the water remain off until the next day.

92.     Welsh was not capable to decontaminate when he returned to the cell due to the water being off.

93.     Welsh was in severe pain throughout the night and he could not see because of the spray in his eyes that he could not wash the spray from his eyes.

94.     Not being able to decontaminate caused Welsh vision to be blurry were he had to seek medical attention to have his eyes flushed.

95.     From May 31, 2022 to October 1, 2022, December 10, 2022 to on or about December 23 2022, Janurary 24, 2023 to on or about April 10, 202, April 25 to on or about May 24, 2023, July 1, 2023 to on or about  November of 2023  Schmoker, Winkler, Angelina Johnson  and Powel did order Welsh to be placed in the restraint system to be cuffed behind the back every time he left the cell to use the phone or to recreation.

96. Welsh was never provided any procedural due process to be placed in restraints.

97.     MTC staff Captain James Pearson, Adam Pierce, Zachary Salavar, James Cruz, ,Willie Barbosa and Stetson Fisher who are shift supervisors, with their mid-level supervisors Sargent Unknown first name Correa, Chapo Rodriguez, Candy Weaver, S. Carrizales, T. Swanger,   and Unknown first name Guzman (night shift)

98.     These MTC supervisors did by the orders of Winckler and Schmoker instruct officers S. Murphree, Anthony Frasier, Ricardo Nipper, Tylor Swanger;

Unknown First Name Cruz (night shift); Joseph  Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; Unknown first name Guzman (nightshift), Lewis. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz;; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unmown First Name McMullen, Frankie Ramirez, Unknown first name Hodge, Unknown First Name Cruz (day shift), Jose Solis.

99.    Williams; Chapo Rodriguez before he was a supervisor; to place Welsh in cuffs on a daily basis if Welsh left the cell for any reason which welsh did leave every day.

100.   The dates of the violations are discoverable but every day one of the  the above named individuals did place Welsh in restraints.

101.   The use of restraint was implemented continuously while Welsh was using the phone, at recreation, and for visitation. Except when there were instances of under inclusiveness as MTC staff did ignore the policy at times such as MTC staff Cardenas, Conde, Murphree and Guzman would occasionally leave the cuffs off and would always open the door to place Welsh in cuffs; Chapo Rodriguez would attach the cuffs by slipping the over Welsh's thumbs and thought Conde and Murphree, Renfro would occasionally leave the cuffs off when these individuals worked.

102.   Welsh suffered numerous wounds upon his writs, open cuts, and bruising that left permanent scars upon his body during the  span of wearing the cuffs. This caused Welsh pain and agony.

103.   Welsh info1med James Pearson that the cuffs were defective that were being continuously used against Welsh.

104.   These cuffs would stick when trying to take them off and the staff would then twist the cuffs and Welsh's hands at odd angles biting into Welsh's skin causing him to bleed every day or have open wounds and scrapes.

105.   James Pearson after checking the cuffs and noticing that it took several attempts to open the cuffs only stated to Welsh that he did not care because cuffs are not meant to be comfortable.

106.   On 7-18-22 and several times after that  Welsh informed Winckler of the same defect in the cuffs and how it was causing Welsh pain and stated that he would look into it but never did.

107.   The restraints did aggravated Welsh's neuropathy that would not have been aggravated without the daily use of restraints for long periods of time. This caused Welsh to lose the functioning in his hands for several hours every day. Which also caused him the loss of the enjoyment of life.

108.   The use of restraints left deep psychological scars upon Welsh that making him depressed with thoughts of suicide sleepless nights due to the fear and anxiety cause severe headaches and stomach cramps.

109.   Welsh was chained every time he left the cell for recreation and when he used the phone, with the restraints never being removed.

110.   On 8-10-22 and several times after that Welsh did inform Winckler, again that the cuffs were defective and that they were causing Welsh sever pain when the staff tried to remove them. Again Winckler told Welsh he would look into it but never did.

111.   On or about 9-1-22 and several times after that Welsh again informed Winckler that he was in severe pain due to the cuffs malfunctioning. At that time Winckler informed Welsh that he just does not care if Welsh is in pain.

112.   The use of restraints in this manner for from May 31, 2022 to October 1, 2022, December 10, 2022 to on or about December 23 2022, Janurary 24, 2023 to on or about April 10, 202, April 25 to on or about May 24, 2023, July 1, 2023 to on or about  November of 2023 was meant to punish Welsh serves as an exaggerated response to Welsh's action. The exaggerated response can be seen because Texas law sets down the use of restraints. See Texas Health and safety code 841.0838.

113. The Texas legislature did not change the restraint law until Sept. 1 of 2023 making the requirement necessary for the safety and security of the institution.

114.   Furthermore the State creates a liberty interest in the grant of power to operate the TCCC and those expressed powers to deal with recalcitrant inmates under rights declaring Welsh as a resident has a right to be free from the use of

force except in instances of self-protection, protection of Welsh or others or property protection.

115. This also shows that the use of the restraints was an exaggerated reponse to security concerns given the requiremnents by the state to use said restraints.

116.    There were several instances of under inclusiveness for the use of mechanical restraints which shows the intention was to punish Welsh.

117.    The use of mechanical restraints From May 31, 2022 to October 1, 2022, December 10, 2022 to on or about December 23 2022, Janurary 24, 2023 to on or about April 10, 202, April 25 to on or about May 24, 2023, July 1, 2023 to on or about  November of 2023 were meant to punish Welsh as there are several incidents that the MTC Administrators Wayne Schmoker, John Powel,  Angelina Johnson and James Winckler under the MTC/TCCO policy, did not use the mechanical restraints restriction when Sexual Violent Predator Predators John Alexander destroyed a TCCO office cubical, assault resident Rayson, and assaulted staff members X. Guzman, Ashley Batista ,A. Fraser, V. Garrero, and S. Carrizales , Troy Plaisance assaulted another resident Bambeck, Resident Thedford did assault resident Riggs, Daral Hood did assault another resident Gram, John Davis did assault another resident Vella, Victor Jackson took a metal lock inside a mess bag to assault another resident Claxton, Robert Fluke did assault TCCC resident Ryan Bryant and Kevin Allen; Kevin Allen did cause a disturbance forcing MTC staff to use force to move him to SMU; Falcon did break a resident Jackson jaw, Deven1 Williams did assault resident Lovings, Justin Stratton did assault resident Hood and broke his leg, Rolling and Anthony Wiley did assault each other, Justin Wetzel destroyed over $10,000 worth of computers, Gregory Green did assault

MTC employee Adrian Flores with a metal lock that had a belt attached to better swing the lock, Carol Lewis did threaten to inflict bodily injury against an MTC employ Ashley Batista; Mark Hall did establish a relationship with an unknown female MTC staff member; Andre Johnson did stalk an MTC staff member Carpenter; Kevin Allen did have a major use of force against him for refusing housing where he was OC spray used against him and several officers were injured during the encounter; Chris Simmons did corner two therapist for MTC Ward and Grubbs on two different occasions in an office refused to allow them to leave and forced them to watch as he exposed himself and masturbated to ejaculation; Rodney Rhymes; did threaten to kill staff and kill himself with a razor in his hand; William Robinson did destroy MTC property a fan, took a piece of metal of the fan exhibited as a weapon and threaten to kill MTC employee Martinez; Oscar Lares did assault several residents at the civil commitment center; Kevien Allen assaulted MTC Salavar twice, Jason Dockery assaulted MTC Salavar; and Justin Sanchez assaulted MTC staff Sgt. Michael Arenivaz.

118.   The under-inclusiveness of the use of mechanical restraints against Welsh in instances that the Texas Health and Safety Code 841.0838 does not allow but not against individuals who the law would apply and shows that it was an over exaggerated response and excessive to Welsh's actions and meant to punish.

119.   The use of mechanical restraints From May 31, 2022 to October 1, 2022, December 10, 2022 to on or about December 23 2022, Janurary 24, 2023 to on or about April 10, 202, April 25 to on or about May 24, 2023, July 1, 2023 to on or about  November of 2023 was excessive and over exaggerated response to any security concerns as the length of time that the restraints were employed against Welsh shows that he was punished.

120.   The State creates a liberty interest that the use of force listing mechanical or chemical restraints shall never be used as punishment. See Exhibit B TCCO and MTC Contract pg. 46.

121.   The use of restraints were used as further punishment by Schmoker, Powell, and Winckler from  From May 31, 2022 to October 1, 2022, December 10, 2022 to on or about December 23 2022, Janurary 24, 2023 to on or about April 10, 202, April 25 to on or about May 24, 2023, July 1, 2023 to on or about  November of 2023for rule violations.

122.   Wayne Schmoker, John Powell, or James Winckler ever provided any procedural process to Welsh from 5- 31-2022 to 10-1-2022 to allow for the use of restraints to deny him his liberty and intending to punish Welsh further. Welsh never had a hearing or was able to speak upon his rights to be free from the use of mechanical restraints.

123.   Several TCCO employees did witness Welsh in restraints and refused to protect Welsh when Welsh asked for their protection which were Lisa Peralta, Uknown name Clum, Kendrick Fennel, and Chris Greewalt .

124. The operation specialist Derek Porter did order Welsh into mechanical restraints on 9-23-22. After observing that Welsh was on the phone without them he did inform Pierce that Welsh was out of his isolation cell without the restraints.

125.   Management and Training Corporation approved this system by never correcting the use of the unlawful physical restraints when they were informed by Welsh  that no procedural process or professional medical judgment was utilized to continue the restraint restriction.

126.   Chris Greenwalt did observe Welsh in full restraints leg shackles and hand restraints on two separate dates June 29, 2022 and August 10, 2022. Welsh did ask her to protect Welsh from the unlawful use of the restraints. Greenwalt refused to help Welsh.

127.   Greenwalt, did use the restraints as punishment and failed to provided a hearing for the restraints as she sat at the Behavioral Management Hearing that imposed punishment upon Welsh for rule violations the reason why he wore the restraints From May 31, 2022 to October 1, 2022, December 10, 2022 to on or about December 23 2022, Janurary 24, 2023 to on or about April 10, 202, April 25 to on or about May 24, 2023, July 1, 2023 to on or about  November of 2023

128.   Welsh's case manager is Lisa Peralta.

129.   Peralta comes and visits with Welsh once a month.

130.   Welsh asked her several times to protect him on the monthly visits. Where she has acknowledge the use of restraints she has refused to protect Welsh from the unlawful use of the restraints. Peralta wrote this in a quarterly report.

131.   Welsh was punished by the restraint restriction implemented by MTC policy without procedural process allowing the MTC administration of the TCCC

Schmoker, Powel, Angelina Johnson, and Winckler  could order through said restraint policy  indefinite restraints.

132.   The law at the time of the offensive conduct states under Texas Health and Safety Code Sec. 841.0838. Use of Restraints. (a) An employee of the office, or a person who contracts with the office or an employee of that person, may use mechanical or chemical restraints on a committed person residing in a civil commitment center or while transporting a committed person who resides at the center only if:

(1)   the employee or person completes a training program approved by the office on the use of restraints that:

(A)   includes instruction on the office's approved restraint techniques and devices and the office's verbal de-escalation policies, procedures, and practices; and

(B)   requires the employee or person to demonstrate competency in the use of the restraint techniques and devices; and

(2)   the restraint is:

(A)   used as a last resort;

(B)   necessary to stop or prevent:

(i)   imminent physical injury to the committed person or another;

(ii)   threatening behavior by the committed person while the person is using or exhibiting a weapon;

(iii)   a disturbance by a group of committed persons; or

(iv)   an absconsion from the center; and

(C)   the least restrictive restraint necessary, used for the minimum duration necessary, to prevent the injury, property damage, or escape.

(b)   The office shall develop procedures govelning the use of mechanical or chemical restraints on committed persons.

Texas Civil Commitment Office defines imminent by policy as about to take place.

133.   Management and Training Corporation had a duty to train the security staff at the Texas Civil Commitment Center for the use of the mechanical and chemical restraints that did not adequately provide an understanding for the use under the "imminent physical injury" and "necessary to stop or prevent" and "used as a last resort" being  mandatory language under the law or the requirement to use ascending force to first attempt physical holds and maneuvers instead of using mechanical restraints and an intimidate restraint by weapon of the OC spray.

134.   The Contractual provisions between the State of Texas and MTC also has mandatory langue that the use of force listing mechanical or chemical restraints as permissible us of force that shall only be used against resident has a right to be free from the use of force except in instances of self-protection, protection of Welsh or others or property protection and shall never be used as punishment.

135.   No procedural due process was provided by McLane's written and approved policy and her approving and condoning MTC policy through her assistant Jessica Marsh.

136.   The need for the training was obvious for the use of chemical restraints as this is intermediate force, the OC spray is considered a deadly weapon and should only be used in the instances of ascending force when other force was not capable of achieving the security objective.

137.   Welsh has a protected interest in the Texas Health and Safety Code 84.0838 under the United States Constitutional Procedural Due Process. Welsh was never provide a hearing for his procedural interest in the State Created Liberty Interest.

138.   MTC policy also allows for Schmoker, Powell, Angelina Johnson, and Winckler to implement restraint restrictions  without professional judgment.

139.   Welsh's mental condition worsened during this time as it was apparent that he had no protection in the law that caused a depressed state of mind of helplessness and hopelessness to the point that Welsh was driven temporarily insane causing thoughts of suicide.

140. Welsh was in SMU on April the 9th of 2022 without receiving a behavioral Management Hearing or no BMR restricted Welsh's visits yet was denied a visitation by Wayne Schmoker.

141. Schmoker also denied visitation from January 25, 2023 until December 22, 2023 without Welsh ever being placed upon restriction for visitation and confiscated Welsh's non-contraband MP4 player never giving any procedural process.

142.   On May 17, 2022 TCCO Case Manager Kendrick Fennel did file a false disciplinary report claiming Welsh threatened him in order to place Welsh in solitary (SMU). However, the treat he claimed was Welsh loudly said "WHAT."

143.   Under policy in order to threaten someone a resident must threaten to inflict bodily harm. However, Fennel did ask Wayne Schmoker and James Winckler to have James Pearson place Welsh in solitary (SMU) confinement.

144.   Welsh was pre-punished for the 20 days being placed in SMU with only limited property, restricted recreation which consists of a cage on a concrete slab, limited phone time, and visitation by Marsha McLane and MTC policy imposed by Jessica Marsh and Wayne Schmoker.

145.   Welsh was never served a case by staff for the alleged threat on TCCO Fennel and did not know he had a pending disciplinary until June 7, 2022 the day he was taken to the Behavioral Management Review(BMR), which was conducted by James Winckler and Chris Greenwalt who approved not being served with the case. John Powel and Wayne Schmoker stated this is MTC.

146.   On May 17, 2022 Sgt. Candy Weaver did file a false disciplinary against Welsh for making a threat with Welsh's statement that "It will take all of you."

147.   This is not a threat according to policy and welsh was taking into SMU by James Pearson.

148.   Welsh received 30 days in solitary confinement after he had already spent 20 days in solitary that did not count towards his 30 day sentence this was stacked with two other disciplinary for 110 days in solitary confinement.

149.   The BMR was a shame conducted by Sarah Sooter; Chris Greenwalt; and Stetson Fisher as no proof was entered that Welsh actually communicated a threat.

150.   Welsh received 30 days in solitary confinement without after he had already spent 20 days in solitary that did not count towards his 30 day sentence this was stacked with two other disciplinary for 110 days in solitary confinement.

151.   Welsh was denied all but basic hygiene and clothing during the time in SMU for 110 days.

152.   The 180 day package restriction that the panel gave to Welsh as punishment is an exaggerated response by Winckler, Greenwalt, and Sooter the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

153. The panel sentence is an exaggerated response and can be considered cruel and unussal punbishment as the Texas Penal Code 22.01(a)(3) which cover a threat causing bodily injury is punished as a fine Class C misdemeanor.

154. Solitary Confinement is historically considered punishment and its implementation of over 15 days violates international norms.

155. This is impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a treatment program but is a correctional base facility such as the county jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

156.   County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a

max of only 30days despite multiple rule infractions. Texas Administration Code 283.1.

157.   The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 18.

158.   The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 20.

159.   Though Sooter is a license psychologist she stated in writing that she did not exercise profession judgment when she decided to sentence Welsh to 110 days of solitary confinement.

160.   Sooter stated that her opinion was based upon policy and security concerns which she is not qualified to make and did not impute clinical professional judgment..

161.   Solitary confinement is not treatment.

162. In the Tex. Admin. C. 415 Sub. Ch. F., the "overview" states Restraints, Seclusion Are Not Treatment, citing the Joint Commission on Accreditation of HealthCare Organizations; Abuse Mental Health Services Administration; and National Association of State Mental Health Programs.

163. It is specifically promulgated by the adminitrastion code that the seclusion of the mentally ill is to last no longer than the behavioral emergency, reviewed every four hours, and never used to impose discipline or punish.  See also American Psysicatric Association statement on seclusion and restraints.

164.  Fisher, Greenwalt, and Sooter  sat upon the BMR panel did also punish Welsh by giving him 180 day commissary restriction even though they did not provide any procedural process for the restriction failing to state the restriction in writing.

165.  The 180 day commissary restriction that the panel gave to Welsh as punishment is an exaggerated response by Fisher, Greenwalt, and Sooter the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

166.  This is impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a treatment program but is a correctional base facility such as the county jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

167.  County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a max of only 30days despite multiple rule infractions. Texas Administration Code 283.1.

168.   The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time.

169.   The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary.

170.   On May 31, 2022 Welsh was sprayed with chemical restraints OC spray and was written a case for causing a disturbance

171. The MTC James Winckler did witness the events and even ordered Captain Pearson to spray Welsh with OC spray. Yet, Winckler also sat as chair of the BMR panel. Therefore, he was not neutral in making the decision and bias to the outcome.

172.   Additionally, several residents wanted to give sworn statements of the events.

173.   Resident Sam San Miguel; Ernesto Cerda; John Alexander; and Anthony Wiley asked to write sworn statements on behave of Welsh, yet staff F. Lewis refused to provide assistance to get the statements.

174.   The hearing was a sham due to the lack of procedural due process that requires witness statements and an unbiased decision maker.

175.   Welsh was given 30 days in solitary confinement without any property.

176.   James Winckler finding afterwards that the disciplinary in his opinion did not go far enough, increased Welsh's punishment by stacking his punishment with his prior disciplinary without procedural due process.\

179.   Welsh's disciplinary that was conducted on June 29, 2022 did not reflect the increased stacked time with the disciplinary hearing on June 7, 2022 therefore increasing Welsh's total time to 140 days.

180.   The 180 day package restriction that the panel gave to Welsh as punishment is an exaggerated response by Winckler, Greenwalt, and Sooter the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

181.   Winckler, Greenwalt, and Sooter the BMR panel did also punish Welsh by giving him 180 day commissary restriction even though they did not provide any procedural process for the restriction failing to state the restriction in writing.

182.   The 180 day commissary restriction that the panel gave to Welsh as punishment is an exaggerated response by Winckler, Greenwalt, and Sooter the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

183.   This is impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a treatment program but is a correctional base facility such as the county jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

184.   County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a max of only 30days despite multiple rule infractions. Texas Administration Code 283.1.

185.   The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time. See Exhibit A Texas Depaltment of Criminal Justice Disciplinary Procedures pg. 18.

186.   The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 20.

187.   Though Sooter is a license psychologist she stated in writing that she did not exercise professional judgment when she decided to sentence Welsh to 110 days of solitary confinement.

188.   Sooter stated that her opinion was based upon policy and security concerns which she is not qualified to make and did not impute clinical professional judgment..

189.   Solitary confinement is not treatment and is banned by the administration code Ch. 415 Sub. Ch. F and the American Psysicatric Association statement on seclusion and restraints.

190.   On July 17, 2022 and July 18 2022 Welsh received three disciplinary report
(1) For creating a disturbance; (2) For destruction of property; (3) For threating to
inflict harm; and (4) For assault on staff by throwing milk

191.   On July 17, 2022 Officer Shane Murphree did refuse to allow Welsh to eat
his lunch tray; and would not allow him to use the restroom while locked in a steel
cage.

192. He was claiming that Welsh refused his tray and refused to place Welsh in
cuffs to escort him to the restroom. Indicating that Welsh could wait or pee
himself.

193. He left the area were Welsh was claiming to another resident John Alexander
as he left that he was not going to feed Welsh, ·that Welsh refused placing Welsh's
tray down.

194. When Murphree left the area Welsh who had to pee urinated upon the ground
instead of urinating on himself as Murphree indicated.

195.   Welsh then removed the bolts from the covered opening of the cage and
slipped out of the opening.

196.   Welsh then went and grabbed his food.

197.   As Welsh was walking back he did grab the OC spray from the unattended
officer station out of necessity as Welsh reasonably believed that officers would

cause him imminent harm by spraying him with out cause and feared for his personal safety if he did not take the spray.

198. Welsh who had suffered sever psychological harm from past instances of spraying did have this reasonable belief as his mind as been affected by the policies of MTC and Wayne Schmoker failing to obey the law as it pertains to chemical restraints.

199. The disciplinary panel again conducted by James Winckler ignored the evidence that Welsh did not destroy MTC property as it is still used to cover the caged opening.

191. The disciplinary panel did ignore the evidence that Welsh did not threaten harm any individual. Sgt Weaver did testify that officer Saenz lied about the alleged threats that Welsh did not say he would spray the officers only stipulated that if someone was going to get sprayed it was not going to be Welsh because he had the OC spray.

192. Furthermore, Winckler refused to allow Welsh staff assistance as John Alexander was to right a verified declaration of facts that he witnessed the officer harass Welsh by not allowing him to go to the restroom and did refuse to feed Welsh and to what Welsh actually stated to MTC staff Sgt. Weaver and MTC staff Saenz and how MTC staff James Pearson who Welsh did throw the milk on informed Welsh that he did not care that the hand restraints that MTC staff was placing Welsh in are defective and was sticking when trying to release the mechanism causing staff to twist and bend Welsh's hands and cuffs alike to free him causing Welsh added pain.

193.   John Alexander statements would contradict staff statements and also mitigate Welsh's punishment.

194.   The hearing was conducted as a sham and mere pretense as Winckler informed Welsh at the start of the hearing that he was already found guilty and that the panel had sentenced him to 120 days of solitary confinement with 180 days of package restriction.

195.   This was to run from the date of the hearing of August 10, 2022.

196.   Winckler finding again that the punishment in his opinion was not enough decided not to give Welsh his back time from 7-17-22 which should have started the new disciplinary time.

197.   MTC policy states that a resident can only be given total of 120 days from the most recent violation. This show that Winckler, Greenwalt, and Winslow the BMR panel refusing to start the punishment  from 7-17-22 the start of the violation is an exaggerated response in order to punish Welsh.

198.   The 180 day package restriction that the panel gave to Welsh as punishment is an exaggerated response by Winckler, Greenwalt, and Winslow the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

199.   Winckler, Greenwalt; and Winslow the BMR panel did also punish Welsh by giving him 180 day commissary restriction even though they did not provide any procedural process for the restriction failing to state the restriction in writing.

200. The 180 day commissary restriction that the panel gave to Welsh as punishment is an exaggerated response by Winckler, Greenwalt, and Winslow the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

201. This is impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a treatment program but is a correctional base facility such as the county jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

202. County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a max of only 30days despite multiple rule infractions. Texas Administration Code 283.1.

203. The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 18.

204. The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 20.

205. Though Kevin Winslow is a license psychologist he stated in writing that he did not exercise profession judgment when she decided to sentence Welsh to 120

days of solitary confinement that added on to the 85 days that Welsh had already done in solitary confinement .

206.   Winslow stated that his opinion was based upon policy and not clinical professional judgment.

207.   Solitary confinement is not treatment as discused in the Texas Admin. Code 415 Sub Ch. F and the American Psysicatric Association statement on seclusion and restraints.

208.   In the Tex. Admin. C 415 Sub. Ch. F, the "overview" states Restraint, Seclusion Are Not Treatment, citing the Joint Commission on Accreditation of healthcare Organizations; Abuse Mental Health Services Administration; and National Association of State Mental Health Programs. It is specifically promulgated that the seclusion of the mentally ill is to last no longer than the behavioral emergency, reviewed every four hours, and never used to impose discipline or punish. MTC staff Winkler has purposely used the time when Welsh goes to the BMR as a form of continuous punishment. He knows he will not allow back time for rule violations waits until almost 30 days then sanctions Welsh with the max to increase punishment.

209.   The American Psychiatric Association also states that the use of seclusion and restraint should be for no longer than the behavioral emergency.

210. The panel sentence is an exaggerated response and can be considered cruel and unussal punbishment as the Texas Penal Code 22.01(a)(2) which cover

unwanted physical contact that does not result in bodily injury is punished as a fine Class C misdemeanor.

211. Solitary Confinement is historically considered punishment and its implementation of over 15 days violates international norms. See_____.

212.   Welsh received several cases on January 25, 2023 for contraband, assaulting staff, and creating a disturbance with several others.

213.   On August 9, 2022 MTC staff Nipper did Harass Welsh all night by continuously banging upon his door, slamming the SMU front door all night, spoke loudly in the SMU area by Welsh's door all night and did have his radio turned up at maximum volume to purposely and with the intentions to harass Welsh by keeping him up all night.

214.   Welsh asked for a supervisor Adam Pierce to come and deal with the situation.

215.   Pierce refused to come and Nipper continued to harass Welsh.

216.   Nipper wrote Welsh up for throwing milk on him and did write the false disciplinary report that Welsh threatened to inflict physical harm upon Welsh.

217.   On August 24, 2022 James Pearson, Chris Greenwalt, and Sarah Sooter did conduct the BMR.

218.   Welsh was never served either of the cases that Nipper wrote.

219.   Welsh did ask the panel Pearson, Greenwalt, and Sooter for staff assistance to obtain a verified written witness statement as resident John Alexander who was Welsh's neighbor in SMU did witness the entire events that Nipper did intentionally harass Welsh all night and Nipper did write a false statement that Welsh never verbally threatened Nipper.

220.   This would have help disprove Nipper's false allegations and allow Welsh to mitigate his disciplinary. Nipper did make libel and defamatory statements when he wrote the false disciplinary.

221.   Nipper intentionally wrote Welsh a false disciplinary to increase Welsh's solitary confinement time in SMU.

222.   Welsh was never served this case by any MTC staff members and was surprised when he was taking before the BMR panel.

223.   The BMR panel Pearson, Greenwalt, and Sooter did give Welsh a total of 30 days in solitary plus 180 day package restriction.

234.   Schmoker Powel, and Winckler did decide together after the disciplinary that 30 days was not enough and did increase Welsh's punishment to 60 days from the day that Welsh's prior disciplinary stacking the restrictions upon each other despite the fact that the panel did not conclude this to be Welsh's punishment.

235.   This resulted in Welsh's release date to be January 10, 2023 for a total of 259 days.

236.   The 180 day package restriction that the panel gave to Welsh as punishment is an exaggerated response by Winckler, Greenwalt, and Sooter the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

237. The BMR panel did also punish Welsh by giving him 180 day commissary restriction even though they did not provide any procedural process for the restriction failing to state the restriction in writing.

238.   The 180 day commissary restriction that the panel gave to Welsh as punishment is an exaggerated response by Pearson, Greenwalt and Sooter the BMR. panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

239.   This is impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a treatment program but is a correction base facility  such  as the  county  jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

240.   County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a max of only 30 days despite multiple rule infractions. Texas Administration Code 283.1.

241.   The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time.

242.   The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary.

243.   Though Sooter is a license psychologist she stated in writing that she did not exercise profession judgment when she decided to sentence Welsh to 259 days of solitary confinement.

244.   · Sooter stated that her opinion was based upon policy and security concerns which she is not qualified to make and did not impute clinical professional judgment..

245.   Solitary confinement is not treatment.

246.   In the Tex. Admin. C 415 Sub. Ch. F, the 'overview" states Restraint, Seclusion Are Not Treatment, citing the Joint Commission on Accreditation of healthcare Organizations; Abuse Mental Health Services Administration; and National Association of State Mental Health Programs. It is specifically promulgated that the seclusion of the mentally ill is to last no longer than the behavioral emergency, reviewed every four hours, and never used to impose discipline or punish. MTC staff Winkler has purposely used the time when Welsh goes to the BMR as a form of continuous punishment. He knows he will not allow back time for rule violations waits until almost 30 days then sanctions Welsh with the max to increase punishment.

247.   The American Psychiatric Association also states that the use of seclusion and restraint should be for no longer than the behavioral emergency.

248. The panel sentence is an exaggerated response and can be considered cruel and unussal punbishment as the Texas Penal Code 22.01(a)(2) which cover unwanted physical contact that does not result in bodily injury is punished as a fine Class C misdemeanor.

249.   On 9-11-22 Welsh received three cases one from officer Lewis. Rayos Rayos and two from officer S. Carrizales.

250.   Rayos wrote Welsh a disciplinary for failing to obey an order refusing to consent to a pat down search.

251.   S. Carrizales wrote Welsh a disciplinary for being out of place and cursing at her.

252.   MTC staff L. Rayos wrote a false disciplinary as Welsh first requested to be stripped search instead of pat searched. Being refused his request he then requested to speak to. a supervisor which is part of the informal resolution process.

253.   After the supervisor came Welsh was denied his request and did submit to the pat search.

254.   Rayos attempted to manipulate the wording of the disciplinary claiming Welsh was belligerent.

255.   However, Rayos admitted that Welsh was only being loud and wrote that Welsh was loud in the SMU log book.

256.   During the incident Zackery Saldivar who was the MTC shift supervisor did pull out his OC spray and threatened to spray Welsh in the face just because Welsh was loudly stating his opinion.

257.   This placed welsh in sever fear that Saldivar intended to harm him and Welsh had nightmares of Saldivar taking Welsh and holding him down while he sprayed Welsh's eyes.

258.   This placed a chilling effect upon Welsh from making verbal complaints and verbal grievances to a supervisor.·

259.   MTC staff S. Carrizales did write Welsh a false disciplinary by stating Welsh was out of place.

260.   MTC describes out of place as In any unauthorized area, such as a housing area or building to which one Is not assigned; or Failure to be at a designated area at a specified time.

261.   Moreover, Welsh only stepped out of the SMU (Echo 1) area into the Echo main area to ask another officer for to call a supervisor which given what had transpired in the past when MTC staff refused to call a supervisor to resolve any issues.

262.   Welsh never did leave his housing area of Echo.

263.   Welsh has consistently went outside the SMU  area into the Echo  corridor when Welsh help feeds the SMU residents by receiving the food trays and the drinking containers and then placing them back out, coordinates the laundry for the SMU residents with resident workers in the Echo corridor, and obtain cleaning supplies for SMU.

264.   This has been constantly allowed while Welsh has been within the SMU housing area outside the SMU area on a daily bases to the same extent that Welsh went outside the SMU area no further than what was necessary to inform the other officer his desire to contact a supervisor and no fu1iher than he has been outside of the SMU area previously.

265.   S. Carrizales did manipulate the disciplinary report claiming that she observed Welsh on the camera presenting a fighting stance to Rayos.

266.   However, Rayos never wrote in his report that Welsh presented a fighting stance towards Rayos or threaten Rayos in any way.

267.   Similarly, Welsh was never allowed to present the SMU log book or call Rayos as a witness.

268.   Furthermore, another MTC staff wrote Welsh a case for creating a disturbance for being at of place, watched the same camera as S. Carrizales only she never stated that Welsh was presenting a fighting stance towards Rayos.

269.   Welsh who had his shirt off because he attempted to have Rayos strip search him did present his shirt to Rayos to be searched. Rayos stated this in the SMU logbook, however he purposely did not include this in his written report in order to bring the false disciplinary charges against welsh.

270.   This was a concerted effort to bring false disciplinary charges against Welsh by Rayos and Carrizales.

271.   S. Carrizales did write Welsh a false disciplinary report for cursing at her stating Welsh called her a Bitch and other names.

272.   However, Welsh threatened to have her job and sue her for writing false reports.

273.   S. Carrizales did write the report in retaliation for Welsh's statements that he would sue her for fabricating a false disciplinary report.

274.   Welsh went to the BMR 10/12/22 which was conducted by Zackary Saldivar, Chris Greenwalt, and Rebeca Lang.

275.   Zackary Saldivar was the MTC staff supervisor that investigated the case was present during the time of the incident and was the person that Welsh attempted to informally resolve the issues, therefore Saldivar was not a neutral decision maker to sit on the panel.

276.   Welsh informed the entire panel and Saldivar that he is not a neutral decision maker. However all panel members ignored Welsh's complaint.

277.   Saldivar confided to both Greenwalt and Lang that Welsh did obey the order after he had asked for a supervisor. Only Saldivar asked them to find Welsh guilty for asking for the supervisor in the first place. This placed a Chilling effect upon Welsh asking for a supervisor.

278.   There was no evidence that Welsh disobeyed the order.

279.   Welsh also informed all members of the panel that he is consistently allowed outside of SMU to feed the SMU residents by receiving the food trays and the drinking containers and then placing them back out, coordinates the laundry for the SMU residents with resident workers in the Echo corridor, and obtain cleaning supplies for SMU and that he went no further than all members of MTC staff have allowed him to exit SMU in the past.

280.   Welsh pointed out that the discipline of him for conduct that MTC staff has allowed being under inclusive and exaggerated response of any security concern.

281.   Likewise, there was no evidence that Welsh was out of place as stated Welsh never left the Echo living area.

282.   Similarly, Welsh info1med the panel that he had threatened S. Carrizales with only legal action and that this disciplinary is truly about retaliation.

283.   Saldivar informed Welsh that he needs to be careful on how he threats with legal action.

284.   Welsh also informed Lang that as the sole member of the panel who is an expert in mental health her judgment must be predicated upon professional clinical judgment and the imposition of solitary confinement is not treatment.

285.   In the Tex. Admin. C 415 Sub. Ch. F, the "overview" states Restraint, Seclusion Are Not Treatment, citing the Joint Commission on Accreditation of healthcare Organizations; Abuse Mental Health Services Administration; and National Association of State Mental Health Programs. It is specifically promulgated that the seclusion of the mentally ill is to last no longer than the behavioral emergency, reviewed every four hours, and never used to impose discipline or punish. MTC staff Winkler has purposely used the time when Welsh goes to the BMR as a form of continuous punishment. He knows he will not allow back time for rule violations waits until almost 30 days then sanctions Welsh with the max to increase punishment.

286.   The American Psychiatric Association also states that the use of seclusion and restraint should be for no longer than the behavioral emergency.

287.   The members of the panel found Welsh guilty for 10 days per violation stacked for a total of 30 days added to 180 days package restriction.

288.   Saldivar, Greenwalt, Lang, Rayos, and Carrizales did conspire and aid and abet each other to bring false disciplinary against Welsh and retaliated and conspired to retaliate with each other to retaliate against Welsh for exercising his

289.   First amendment right to make a complaint to a supervisor and to file legal action for false disciplinary proceedings.

290.   Carrizales and Saldivar did and as an agent of MTC and MTC by publishing trough the disciplinary report for future use by clinical therapist, the libel and slanderous statements of Carrizales and Saldivar made these false statements with malice with a reckless disregard for the truth to cause the defamation of Lonnie Kade Welsh and bring false disciplinary charges against him.

291.   On or about October 25, 2022 an officer Aguirre did slam the SMU door at about O145 in the morning several times.

292.   Welsh did call her to his door by hitting the call button.

293.   Welsh explained to Aguirre that it was unnecessary to repeatedly slam the door.

294.   Welsh explained to Aguirre that he is allowed uninterrupted sleep and that her consistently slamming the door without cause has interrupted that sleep.

295.   Aguirre informed Welsh that she will continue to slam the door all night regardless of Welsh's need to sleep.

296.   Welsh then told Aguirre that "Your Luck I don't file suit on you."

297.   Aguirre then wrote welsh a disciplinary claiming Welsh said "Your Lucky I don't throw shit on you."

298.   Aguirre did file the disciplinary in retaliation for welsh threatening her verbally with legal action.

299.   MCT staff supervisor James Cruz did come and talk to welsh about the disciplinary.

300.   Welsh informed him that he did not threaten to throw shit on Aguirre. That he would never do that because it is a Felony.

301.   Cruz informed Welsh that regardless Welsh needs to learn how to speak to people and it is not acceptable to threaten his staff with legal action.

302.   On November 2, 2022 Welsh went to BMR conducted by Adam Pierce, Chris Greenwalt, Jacquelyn Wilson.

303.   Welsh informed the panel that this is about him threating the staff with legal action for continuous disturbing and harassing behavior impairing the right to sleep.

304.   The panel found Welsh guilty of threats issuing a warning that included package restriction attempting to chill Welsh from seeking redress from the court where an ordinary person would not peruse a civil suit in the face of disciplinary actions.

305. Aguirre did and as an agent of MTC and MTC by publishing trough the disciplinary report for future use by clinical therapist, the libel and slanderous statements of Aguirre made these false statements with malice with a reckless

disregard for the truth to cause the defamation of Lonnie Kade Welsh and bring false disciplinary charges against him.

306. On November 22, 2022 MTC staff Victor Guerrero purposely slammed the door all morning and was yelling across the SMU area to MTC Maria Weaver. MTC staff Weaver did keep her radio loud, while her and MTC staff Sanchez purposely talked loudly. Then MTC Staff Darla Jennings was yelling to Weaver from across SMU. The purpose was to harass and disturb Welsh's sleep early in the morning.

307. Welsh attempted to speak first to Jennings who told Welsh go back to sleep. Welsh told her that she has done this multiple times and asked her to respect his need for sleep. She declined. Welsh then told her he would throw juice on her showing her the juice. She then started to yell at him to bring it several times. Jennings did this knowing it would provoke Welsh who has a bipolar mental disorder and her instigative actions were directed toward implementing punishment against Welsh.

308.   Welsh then confronted Guerrero about slamming the door and yelling. Guerrero did tell Welsh he does not have to explain himself. At that point Welsh through cold coffee upon Guerrero. Guerrero did this knowing it would provoke Welsh who has a bipolar mental disorder and her instigative actions were directed toward implementing punishment against Welsh. Weaver claimed drops landed upon her paints.

309.   Jennings, Guerrero, and Weaver called the police stating that Welsh had not only threw a foreign substance upon them, but claimed it contained harassing

material such as urine and feces under Texas Penal Code 22.ll(a)(2)(A)(i). They also claimed for a Felony assault under Texas Penal Code 22.0l(b-1) stating they were acting under the scope of the MTC TCCO contract when the assault occurred.

310.   Lamb County Sheriff Department Investigator Chris Weston came and investigated the assault. He stated he see no probable cause that Welsh committed an offense under either Texas Penal Code 22.0l(b-l) or 22.1l(a)(2)(A)(i).

311.   Welsh was charged with three disciplinary assault without causing bodily injury and creating a disturbance. At the hearing on December 14, 2022, Welsh discussed that nothing actual got on Jennings or Weaver. That Weaver and Jennings lied to help increase Welsh's disciplinary. Further, Welsh stated that the MTC rule was vague as it does not describe what constitutes an assault. Nothing landed on Weaver physical person or Jennings physical person.

312.   Welsh also informed them that writing three disciplinarians upon Welsh was an over exaggerated response to the security concerns and is meant to be part of continued and unbroken harassment by the administration. Welsh asked for witness statements of John Alexander, Tim Hill, and Tim Bradshaw to show the constant staff harassment and was. denied by the BMR panel. The three individuals in charge of the BMR panel were Chris Greenwalt, Adam Pierce, and Jacquelyn Wilson.

313.   Welsh point to the case of John Alexander who did on October 6, 2022 during a use of force by MTC strike MTC Guerrero knocking him into several other people causing them to fall and then grabbed MTC Fraser shaking him hard that caused injuries sever enough to put Fraser in the hospital.

314.   Welsh informed the disciplinary board that Guerrero, Jennings, and Weavers actions are a part of a systematic and purposeful campaign to harass Welsh with a complete disregard and respect for Welsh as a human being who is in need of sleep. That it is unbroken from night to day and to night again of an excessive noise level in SMU to deny sleep.

315.   Welsh was found guilty and given 69 days in SMU solitary confinement and 180 day package restriction. Jacquelyn Wilson was the clinical expert and her opinion to give Welsh 69 days of solitary confinement is contrary to professional norms.

316.   Greenwalt, Pierce, and Pittock served on the DMR panel on Feb. 22, 2023 heard several cases for contraband, violation of written or posted rule, damage to property, assault, creating a disturbance and threats for a total of 8 cases.

317.   Welsh was refused to be allowed to attend the hearing by James Winckler and Wayne Schmoker claiming Welsh was aggressive. However, Welsh made no aggressive comments or actions to warrant not being allowed to attend the BMR hearing.

318.   Nether was Welsh allowed to call witnesses or even give a statement in his defense.

319.   The panel sentence Welsh to 8 cases of 30 days solitary confinement for each case to run consecutively with each other  and refused to recognize the time he already spent in solitary before the hearing for a total of 268 days.

320.   Welsh also received 180 day package restriction.

321.   Welsh was also not allowed commissary which is distinct from package by Winckler and Schmoker.

322. The creating a disturbance case utilized the same facts as the other cases to increase Welsh's punishment.

323. The panel sentenced Welsh  to 30 days of solitary confinement for threats which is  harsher that the Texas Penal code 22.01(a)(2) which cover a threat causing bodily harm under Texas Penal Code 22.01(c) which is a class c misdemeanor.

324. A class c misdemeanor carries the punishment of a fine only not solitary confinement time being cruel and unusual punishment.

325.   This is impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a treatment program but is a correctional base facility such as the county jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

326.   County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a max of only 30 days despite multiple rule infractions. Texas Administration Code 283.1.

327.   The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 18.

328.   The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 20.

329. During this time from January 25, 2023 to March of 2023 welsh was not permitted to use the phone, visitation or law library without any process.

330. Greenwalt, Pierce, and Wilson did serve on the BMR panel on 5-3-23 for creating a disturbance and assault.

331. Welsh was refused to be allowed to attend the hearing by James Winckler and Wayne Schmoker claiming Welsh was aggressive. However, Welsh made no aggressive comments or actions to warrant not being allowed to attend the BMR hearing.

332.   Nether was Welsh allowed to call witnesses or even give a statement in his defense.

333.   The panel sentence Welsh to two cases of 30 days solitary confinement for each case to run consecutively with each other  and refused to recognize the time he already spent in solitary before the hearing  adding for a total of 270 days.

334.   Welsh also received 180 day package restriction.

335.   Welsh was also not allowed commissary which is distinct from package by Winckler and Schmoker.

336. The creating a disturbance case utilized the same facts as the other cases to increase Welsh's punishment.

337. The panel sentenced Welsh  to 30 days of solitary confinement for threats which is  harsher that the Texas Penal code 22.01(a)(3) which cover a threat causing bodily harm under Texas Penal Code 22.01(c) which is a class c misdemeanor.

338. A class c misdemeanor carries the punishment of a fine only not solitary confinement time being cruel and unusual punishment.

339.   This is also impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a treatment program but is a correctional base facility such as the county jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

340.   County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a max of only 30 days despite multiple rule infractions. Texas Administration Code 283.1.

341.   The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time.

342   The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary.

343. During this time from April 24, 2023 to on or about May 23, 2023 Welsh was not permotted to use the phone, visitation or law library without process.

344. Clum, Shelby, and Winckler did serve on the BMR panel against Welsh for the alleged case of threats on August 4, 2023.

345.   Welsh was refused to be allowed to attend the hearing by James Winckler and Wayne Schmoker claiming Welsh was aggressive. However, Welsh made no aggressive comments or actions to warrant not being allowed to attend the BMR hearing.

346.   Nether was Welsh allowed to call witnesses or even give a statement in his defense.

347.   The panel sentence Welsh to  30 days solitary confinement and refused to recognize the time he already spent in solitary before the hearing for a total of 58 days.

348.   Welsh also received 180 day package restriction.

349.   Welsh was also not allowed commissary which is distinct from package by Winckler and Schmoker.

350. The panel sentenced Welsh to 30 days of solitary confinement for threats which is harsher that the Texas Penal code 22.01(a)(2) which cover a threat causing bodily harm under Texas Penal Code 22.01(c) which is a class c misdemeanor.

351. A class c misdemeanor carries the punishment of a fine only not solitary confinement time being cruel and unusual punishment.

352.   This is impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a treatment program but is a correctional base facility such as the county jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

353.   County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a max of only 30 days despite multiple rule infractions. Texas Administration Code 283.1.

354.   The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time.

355.   The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary.

356. Winckler, Greenwalt, Winslow did serve on the BMR panel against Welsh for the alleged two cases of refusing to abbey orders on 8-11-23.

357. Welsh was refused to be allowed to attend the hearing by James Winckler and Wayne Schmoker claiming Welsh was aggressive. However, Welsh made no aggressive comments or actions to warrant not being allowed to attend the BMR hearing.

358. Nether was Welsh allowed to call witnesses or even give a statement in his defense.

359. The panel sentence Welsh to 2 cases of 30 days solitary confinement for each case to run consecutively with each other  and refused to recognize the time he already spent in solitary before the hearing for a total of 115 days.

360. Welsh also received 180 day package restriction.

361. Welsh was also not allowed commissary which is distinct from package by Winckler and Schmoker.

362. Welsh was also not allowed commissary which is distinct from package by Winckler and Schmoker.

363. The panel sentenced Welsh  to 30 days of solitary confinement for threats which is  harsher that the Texas Penal code 22.01(a)(3) which cover a threat causing bodily harm under Texas Penal Code 22.01(c) which is a class c misdemeanor.

364. A class c misdemeanor carries the punishment of a fine only not solitary confinement time being cruel and unusual punishment.

365. This is impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a treatment program but is a correctional base facility such as the county jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

366. County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a max of only 30 days despite multiple rule infractions. Texas Administration Code 283.1.

367. The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 18.

368 The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 20.

369. Winckler, Greenwalt, Winslow did serve on the BMR panel against Welsh for the alleged 13 cases for assault, use of vulgar language, and creating a distrubance on 9-1-23.

370. Welsh was refused to be allowed to attend the hearing by James Winckler and Wayne Schmoker claiming Welsh was aggressive. However, Welsh made no aggressive comments or actions to warrant not being allowed to attend the BMR hearing.

371. . Nether was Welsh allowed to call witnesses or even give a statement in his defense.

372.   The panel sentence Welsh to 13 cases of 30 days solitary confinement for each case to run consecutively with each other  and refused to recognize the time he already spent in solitary before the hearing for a total of 495 days.

373.   Welsh also received 180 day package restriction.

374.   Welsh was also not allowed commissary which is distinct from package by Winckler and Schmoker.

375. The creating a disturbance case utilized the same facts as the other cases to increase Welsh's punishment.

376. The panel sentenced Welsh  to 30 days of solitary confinement for threats which is  harsher that the Texas Penal code 22.01(a)(3) which cover a threat causing bodily harm under Texas Penal Code 22.01(c) which is a class c misdemeanor.

377. A class c misdemeanor carries the punishment of a fine only not solitary confinement time being cruel and unusual punishment.

378. The sentencing of Welsh for vulgar language is in direct retaliation for the use of vulgar speech.  Angelina Johnson, Greenwalt, and Sandoval did serve on the BMR panel against Welsh for the alleged case of verbal aggression on 8-25-23.

379. Welsh was refused to be allowed to attend the hearing by James Winckler and Wayne Schmoker claiming Welsh was aggressive. However, Welsh made no aggressive comments or actions to warrant not being allowed to attend the BMR hearing.

380.   Nether was Welsh allowed to call witnesses or even give a statement in his defense.

381.    The panel sentence Welsh to 1 cases of 30 days solitary confinement for each case to run consecutively with each other  and refused to recognize the time he already spent in solitary before the hearing for a total of 525 days.

382.   Welsh also received 180 day package restriction.

383.   Welsh was also not allowed commissary which is distinct from package by Winckler and Schmoker.

384. The sentencing of Welsh for verbal aggression is in direct retaliation for the use of vulgar speech.

385.   This is impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a

treatment program but is a correctional base facility such as the county jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

386.   County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a max of only 30 days despite multiple rule infractions. Texas Administration Code 283.1.

387.   The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time.

388.   The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary.

389.   Part of the package and commissary restrictions imposed by MTC Schmoker, and Winckler enforce this policy and MTC has written policies did deny the ability to read. MTC policy stating that restriction of books is acceptable. Welsh did attempt to order Books by David Weber, Raymond Fist, and several legal books dealing with rules of evidence and trial objects which were denied.

390..   Welsh was denied the ability to order books regardless of content and denied the right to order reading books without procedural process. The head clinical director M Sandoval denied personal reading books and therapist Rachel Lang and Winslow did deny legal and personal reading books under citing to the policy and generally denying Welsh without professional clinical judgment and contrary to professional accepted standards.

391.  Likewise John Powel, Wayne Schmoker  and Angelina Johnson did deny personal reading books that was condoned by Texas Civil Commitment Office Derek Porter stating reading material such as personal books are not approved personal property items therefore Welsh is not allowed to order books.

392.  This is an over exaggerated response to any security concerns and is imposed for the purpose to increase punishment.

393.  These disciplinary conditions confiscate all property in Welsh's possession, except legal and therapy material, confines in a dungeon type setting by blocking out all sensory input and preventing Welsh from communicating with others for thirty days at time.

394.  The disciplinary conditions impose 6 months' worth of restrictions to prevent acquiring  personal property.

395.  The confinement conditions by policy are not made by a professional medical professional therefore it is not made in the interest of treatment. Over 1,000 Behavioral Management hearings have been conducted at the TCCC for SVP clients and none have implemented clinical professional judgment standards under Marsha McLane's and MTC policy standards.

396.  These conditions are imposed against Welsh even if he is not found guilty. Welsh was pre-punished for every above case before he had a procedural due process hearing.

397.   The confinement conditions are an exaggerated response to supervision needs to impose punishment that are extreme in nature in comparison to any supervision requirements such as security of the Texas Civil Commitment Center.

398.   Other well ran institution such as Texas Department of Criminal Justice (TDCJ) whose institutions that is designed to punish those allow access to a recreation yard or gym for two hours daily for their most sever security risk offenders.

399.   MTC's  policy is similar to placement in solitary confinement for thirty days at a time and as stated most instances Welsh has not been credited his back time in SMU resulting in pre- and over punishment.

400.   The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary.

401.   The continued lock down in solitary confinement affected Welsh's mind and sent him into a depressive state that worsen his mental conditions to the degree that he contemplated suicide.

402. MTC has not applied for a rule for the confinement conditions for the placement in solitary confinement of those civil committed under Texas Health and Safety 841.0838 under Texas Government Code Sec. 2002.051 as is required to carry the democratic mandate for the wide latitude to implement such conditions.

403. The Texas Legislation has not given MTC the power to punish those civilly committed by statute.

404.   The solitary confinement is not conducted by medical professionals and is retributive punishment being an exaggerated response and draconian as compared to the well ran institution of TDCJ .

405.   Other well ran civil commitment centers do not impose 24 hours a day restrictions. Washington use solitary confinement in its treatment program for up to four hours, Kansas will implement solitary confinement for as long as the behavioral emergency is ongoing normally one hour, Florida, Minnesota, and Illinois confine only for 12 hours a day but Minnesota such as contact visits, use of a gym, and use of the MSOP multipurpose room are part of their confinement scheme and Illinois If the patient is not showing suicidal ideation or self-injurious behavior, he typically retains the right to use all personal items in his room, including, if available, the television, music players, books and wide range of available commissary items.

406.   In Massachusetts for acts of murder or rape solitary is utilized only for 30 days for assaults even with aggravating circumstances for up to five days.

407.   These are the conditions imposed for institutional rule violations at these facilities.

408.   Similarly, Welsh's behavioral problems are considered a part of his behavioral abnormality requiring treatment and is prevented from moving forward in the tier process by the Clinical Therapist due to treatment issues.

409.   MTC, Schmoker, and Winckler knew or should have known that Welsh acting contrary to institutional rules is part of his mental illness as expert testify in Welsh's civil commitment and in numerous civil commitment for Sexual Violent Predators to show that there impulsive behavior and repeat rule violation is proof that they possess the behavioral abnormality under Texas Health and Safety Code 841.002.

410. Welsh has been previously diagnosed with a bipolar disorder by TCCO's doctors during a Biennial Examinations.

411. Welsh's behavioral problems were also presented as evidence of his mental illness the state defined medical term of behavioral abnormality.

412. Disciplinary proceedings are used at most Sexually Violent Predator civil commitment proceedings as proof of the mental illness of behavioral abnormality.

413. The implementation of solitary confinement against Welsh for years is a form of mental torture.

414. The implementation of solitary confinement for over 15 days violates international standards in order to preserve human rights and to prevent mental torture. See The United Nations Standard Minimum Rules for treatment of Prisoners (the Nelson Mandela Rules), https://www.unodc.org/documents/justice-and-prison-reform/Nelson_Mandela_Rules-E-ebook.pdf, at rule 37 and 43-45; Special Rapporteur of the Human Rights Council, Torture and Other Cruel, Inhuman or Degrading treatment or Punishment, U.N. Human rights Council (Aug. 2011), https://ccrjustice.org/files/UN-Special-rapporteur-report-on-Solitary.pdf, at pg. 19-20; Article 1 and 7 of the Convention against Torture and Other Cruel, Inhumane and Degrading Treatment or Punishment.

414.  In the Tex. Admin. C 415 Sub. Ch. F, the "overview" states Restraint, Seclusion Are Not Treatment, citing the Joint Commission on Accreditation of healthcare Organizations; Abuse Mental Health Services Administration; and

National Association of State Mental Health Programs. It is specifically promulgated that the seclusion of the mentally ill is to last no longer than the behavioral emergency, reviewed every four hours, and never used to impose discipline or punish. MTC staff Winkler has purposely used the time when Welsh goes to the BMR as a form of continuous punishment. He knows he will not allow back time for rule violations waits until almost 30 days then sanctions Welsh with the max to increase punishment.

415.   The American Psychiatric Association also states that the use of seclusion and restraint should be for no longer than the behavioral emergency.

416.   Therefore, the use of the restraints from and 5-31-2022 to 10-1-2022, on or about December 1 to 15 of 2023, January 25, 2023 to on or about April of 2023, July 1, 2023 to on or about September 15 of 2023 and the solitary confinement in SMU from imposed by the disciplinary stated above are outside professional accepted judgment.

417.   Since neither the Texas Legislation or Marsha McLane contemplated disciplinary procedures Welsh has a right under the Texas Constitution to Art. I Sec. 13 and Art. I Sec. 15 for the deprivation of his civil rights by MTC.

418.   Under Art. I Sec. 13 all courts shall be open, and every person for an injury done him, in his lands, goods, person, or reputation, shall have remedy by due course of law.

419.   Under Art. I Sec 15 the right of trial by jury shall remain inviolate. The right exists when the action involves rights and remedies of the type typically enforced in an action at law.

420. Welsh is being punished without the right to a trial by jury or to the Courts t decided his punishment a right guaranteed by the Texas Constitution yet being invidiously denied Welsh due to his status as a Sexually Violent Predator placed in Civil Commitment.

421.   MTC policy of taking of all personal property, restricting property, and placement in solitary confinement has been known historically as punishment.

422.   The conditions imposed forced Welsh into an extreme depressive state that resulted in the loss of the enjoyment of life, loss of consortium, and caused Welsh temporary insanity with suicidal thoughts and hear of voices and delusions while confined in the extreme draconian conditions.

423.   Neither the 841, the order to commit or the contract allow for Welsh disciplinary charges brought by MTC, Schmoker, and Winckler. These individuals abuse their statutory and contractual grant of power by imposing disciplinary procedures and abuse the court order to commit Welsh to obtain power and dominion over Welsh's body.

424.   The disciplinary therefore is punishment for Welsh acting under the mental disease that diminishes his emotional or volitional capacity to make reasoned decisions or respond to reality rationally.

425. From March of 2022 to December of 2023 Welsh was not allowed to attend group treatment as a result of his disciplinary placement in solitary confinement.

426.   Welsh was released from Lamb County Jail on March 5, 2022 from of false criminal charges placed against him by Wayne Schmoker.

427.   Welsh seen First name unknown Wilson who is clinical therapist , who infom1ed Welsh that Schmoker had told her to place him in tier one because he is coming out of the county jail.

428.   I informed Wilson that I had completed all of tier one assignments, asking if she would like to review the tracking sheets.

429.   She did inform me that Schmoker had refused her to review the prior treatment.

430.   Welsh informed TCCO Guogler who did inform him that he would be given a second interview.

431.   The second interview was assigned to clinical therapist Kevin Winslow Lisa Peralta had a meeting of the minds with Kelley Winslow before Welsh's meeting to deny Welsh his tier in order to punish him for the criminal charges that were filed by the Lamb County Jail the same charges that Welsh was discharged under the interest of justice.

432.   Winslow informed Welsh that he will pay for his crimes and will not be allowed to get away with the crime. After the comment Welsh informed him that

he was discharged in the interest of justice Winslow informed Welsh that just because Welsh was not caught does not mean he will get away with it.

433.   Welsh did inform him that after the District Att01ney reviewed the evidence, Welsh was discharged under the reason stated in the interest of justice which Winslow ignored the findings.

434.   Winslow then stated that he will not go against his coworkers decision not to place Welsh in a higher tier.

435.   Welsh told him that was the purpose of the meeting was to reevaluate him.

436.   Winslow told Welsh that according to Welsh's case ,manager he was not to review the tier placement.

437.   Welsh asked Peralta to help him and protect him from Winslow desire to punish him which she refused to protect him from Winslow and stood -by as Winslow used his position to punish Welsh.

438.   Peralta meet with Winslow and decided that Welsh should be punished for the criminal charges that were dismissed.

439.   Welsh did inform Wayne Schmoker of the incident.

440.   Welsh told Schmoker that they were supposed to evaluate his. prior treatment according to policy.

441.   Welsh also told Peralta that Wilson and Winslow refused to evaluate his prior treatment.

442.   Schmoker advised Welsh that the information was noted,

443.   Peralta advised Welsh that she does not care if Welsh is ever advanced in tier.

444. When Welsh complained to Gougler she stated that Peralta and her never actually intended for Welsh's prior treatment to be recognized but was only given the secound evaluation because Welsh's mother complain ed of the discrimnatory treatment.

445.   The denial to recognition Welsh's prior therapy causes Welsh to live under more strict conditions of confinement that also restricts his rights to personal property. This also prevents him from the seamless transition to release from civil commitment. Individuals who are released from the county jail and TDCJ have their prior treatment reviewed. However, Welsh was denied this because of Schmoker, Wilson, Winslow, and Peralta personal animus against Welsh to harass and retaliate against him for not accepting a plea bargain and to punish him for defending himself against the false criminal charges when Lamb County refused to prosecute him in the interest of justice.

446.   This affected Welsh's mind and spirt to the degree that he is now in a continuous state of depression and has furthered a degree of insanity that causes him to perceive suicide as the only means of relief.

447.  The denial of treatment is in retaliation for Welsh exercising his right to defend himself against false criminal charges as Welsh never assaulted Chavez to be confined in the first place.

448.  No other individual SVP has their therapy stripped from them based upon any perceived behavioral issues. Other individuals such as Chris Simmons who held two therapist hostage as he exposed and masturbated to them had only to due a special assignment to be promoted to tier 3.

449. Other SVP"S have also committed acts both against the law and institutional violations without having to repeat the entire tier and had their prior treatment recognized. SVP committed John Alexander destroyed a TCCO office cubical, assault resident Rayson, and assaulted staff members X. Guzman, Ashley Batista ,A. Fraser, V. Garrero, and S. Carrizales , Troy Plaisance assaulted another resident Bambeck, Resident Thedford did assault resident Riggs, Daral Hood did assault another resident Gram, John Davis did assault another resident Vella, Victor Jackson took a metal lock inside a mess bag to assault another resident Claxton, Robert Fluke did assault TCCC resident Ryan Bryant and Kevin Allen; Kevin Allen did cause a disturbance forcing MTC staff to use force to move him to SMU; Falcon did break a resident Jackson jaw, Deven1 Williams did assault resident Lovings, Justin Stratton did assault resident Hood and broke his leg, Rolling and Anthony Wiley did assault each other, Justin Wetzel destroyed over $10,000 worth of computers, Gregory Green did assault MTC employee Adrian Flores with a metal lock that had a belt attached to better swing the lock, Carol Lewis did threaten to inflict bodily injury against an MTC employ Ashley Batista; Mark Hall did establish a relationship with an unknown female MTC staff member; Andre Johnson did stalk an MTC staff member Carpenter; Kevin Allen did have a major

use of force against him for refusing housing where he was OC spray used against him and several officers were injured during the encounter; Chris Simmons did corner two therapist for MTC Ward and Grubbs on two different occasions in an office refused to allow them to leave and forced them to watch as he exposed himself and masturbated to ejaculation; Rodney Rhymes did threaten to kill staff and kill himself with a razor in his hand; William Robinson did destroy MTC property a fan, took a piece of metal of the fan exhibited as a weapon and threaten to kill MTC employee Martinez; Oscar Lares did assault several residents at the civil commitment center; returned to prison Kevien Allen assaulted MTC Salavar twice, Jason Dockery assaulted MTC Salavar; Felton Brady did possess a cell phone, established a relationship with an MTC employee to bring him contraband to the TCCC and went back to prison for failure to register an online identifier; and Justin Sanchez assaulted MTC staff Sgt. Michael Arenivaz returning to prison.

450. Peralta and Gougler did violate Welsh's liberty and property interest in seamless transition to release without procedural process to take his therapy away  as outlined in Texas Health and Safety Code 841.0831.

451.  Peralta, Gougler, Schmoker, Wilson, and Winslow purpose was to punish Welsh for past criminal charges that he was fully acquitted and released by the state in the interest of justice because Welsh did nothing wrong.

452.  Peralta, Gougler, Schmoker, Wilson, and Winslow did retaliate against Welsh for exercising his United States Constitutional Sixth Amendment right to defend himself against false criminal charges.

453. On or about April 25, 2023 Peralta ordered Welsh to be placed in to restraints stating that he was making threats against staff.

454. Welsh never made any threats.

455. Peralta made the entire incident up and told two different stories to Winckler to have Welsh placed into restraints and a different story later that was recorded on video to Welsh.

456. Winckler ordered Salavar, to place Welsh in restraints.

457. Welsh refused because he did nothing wrong.

458.  Salavar first employeed chemical agents a weapon then ordered the five man team consisting of Pierce,  Nipper, Gurrerro, Jose Ramieriz, and Unknown person.

459. Welsh defended himself and was sent to the County Jail for assault.

460. After the incident Welsh was promoted to tier two within the treatment program.

461. Tier two has less restrictions and is a progressive step to release from civil commitment.

462. Peralta nad Grrenwalt came to the Lamb County Jail to visit Welsh.

463. Peralta nad Greenwalt warned Welsh that if he bonded out that he would be placed upon disciplinary restriction, housed in solitary and be refused treatment if he returned to the TCCC.

464. On July 1, 2023 Welsh bonded out from the Lamb County Jail back to the TCCC.

465. The head of the MTC threapist Sandavol evaluated Welsh and determined that he should be made tier two.

466. MTC therapist Lang came and told Welsh that he would remain tier two on or about July 7, 2023.

467. Within two hours after Lang saw Welsh, TCCO Greenwalt, Gougler and Peralta reached out to Sandoval and requested that she remand Welsh back to tier one.

468. Welsh was housed under disciplinary status in SMU without treatment until on or about December 18, 2023.

469. Wayne Schmoker and John Powel has imposed a policy through their roles as MTC agents to harass Welsh day and night to prevent sleep. They have instructed their staff to continuously slam the door day and night, keep the radio at a loud volume and refuse to prevent the staff from talking loudly all night and into the early mornings right done by Unknown First name Palmer, L. Rayos, Darla Jennings, Unknown First Name Savala, Unknown First name Lorden, Unknown First Name Villarreal, Trevor Swanger, Unknown First name Sgt.

Correa, Unknown First Name James Cruz, Adam Pierce, Joseph Trevino, Settles, Nurse Unknown First name Martinez, Nurse Barragan Fraser, S. Carrizales, Unknown First Name Thorne, Juan Rodriguez; Unknown first name Aguirre; Unknown first name Campbell, Unknown first name Unknown first name Valenzuela Unknown first name Collins, Maria Weaver, Juan Rodriguez, Ashley Batista, Unknown first name Savala, Unknown first name Aguirre Jimmy Renfro; A. Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Richardson, Unknown first name Follower; Unknown first name Nipper, Unknown first name Sierra, Unknown first name Williams; and Emma Himojosa; from the dates of May 17, 2022 to January 24, 2022.

470. Welsh never received more than 15 minutes of sleep a night before it was interrupted by security.

471. These individuals are instructed to slam the door multiple times at night most nights a minimum of 8 times and a maximum of 15 times a night and into the early mon1ing forcing Welsh awake with the loud and unnecessary slamming of the door by Welsh's cell despite there is no need for the policy at night and early morning as there is no movant in the SMU area from 9:30 p.m./. to 8:00 a.m. and by policy have their radio turned up at a loud volume in the SMU area which is a small enclosed space where the sound in amplified due to the design of SMU.

472. These staff members would also talk all night and day in front of Welsh's house that prevented him from sleeping.

473. On 4 12-22 Nipper, Hinojosa, and Sierra worked the SMU area and did make noise all night through load speak and keep their radio up. Welsh asked them

to hold it down and if they did not he would write a grievance, were Nipper
responded that he would beat Welsh's ass calling him a white piece of shit.

474.   Where Hinojosa ran up to Welsh's door and said "do you hear that you white
piece of shit he beat your ass."

475.   The next day Nipper came to work in the SMU, MTC staff Saenz told
Nipper that Welsh was next to use the phone. However, Nipper told Welsh that
since Welsh wants to threaten to write grievances and a law suit on him Welsh was
"a piece of shit" and refused to allow Welsh to use the phone.

476.   On 9-9-22 about midnight Nipper was yelling in the SMU area then passed
Welsh's door and said how do you like that "Welsh bitch."

477.   On or about 11-09- 22 Nipper did work SMU. Welsh asked for a supervisor.
Nipper then asked why, Welsh told him it was personal.

478.   Nipper finally said he would call because "you won't quit whining you white
trash.

479.   James Cruz came and told Welsh that Nipper will stay in SMU despite his
history of harassment and racial remarks against Welsh.

480.   Later that night Welsh asked Nipper for his snack.

481.   Nipper replied that Welsh cannot get shit from him.

482.    Welsh then asked to get a grievance which Nipper said "if you not stop your shit something bad might happen to you." Meaning something bad will happen to Welsh.

483.    These remarks have left Welsh in a constant state of fear that Nipper will hurt him causing extreme headaches and sickness to the stomach.

484.    Welsh has nightmares were Nipper comes into Welsh's cell and starts spraying him with OC spray then beats him to death with a bat. These nightmares happen almost daily.

.485    Welsh did file a complaint with witness statements however, the investigation resulted with it being unfounded because Nipper said so.

486.    Welsh is afraid to file grievances on Nipper or any MTC staff because of fear of retaliation placing a chilling effect upon him filing grievances..

487.    July 2022 Welsh requested to go to the dentist because of sever tooth pain request to get a filling.

488.    Welsh has dental insurance and informed MTC medical department that he had the insurance.

489.    October of 2022 Welsh seen MTC Medical Nurse Graves who is the head of the medical department at the TCCC.

490. Welsh asked why he is not being permitted to go to the medical appointment.

491. Nurse Graves claimed the reason was due to security under James Winckler.

492. Welsh asked Winkler why he was being denied medical that even convicted murders are allowed to go to medical appointments.

493. He claimed he was not denying medical that if he had security concerns he would just place Welsh in restraints. Welsh is being denied or delayed medical care by either Graves or Winkler without any legitimate reason.

494. Welsh was diagnosed by the dentist with an unsalvageable tooth that was abscessed and infected that cause Welsh extreme mouth pain by Unknown name dentist on December 14, 2022.

495. Reasons given by Graves was that Welsh was in SMU and this was a part of James Winkler's and Wayne Schmoker's punishment of Welsh. Welsh was in extreme pain in in mouth and jaw for several months by the delayed medical care from July to December 12, 2022.

496. Welsh has sever urination problems and had a MRI medical scan commenced while he was in the county jail in 2022 that showed his prostate himerging blood.

497. Welsh did not intially know of the problem but later gained access to the records.

498. Welsh complained to medical DR. Brunslow.

499. Brunslow refused to have Welsh be seen by a urologist under Schmoker and Winkler's orders because Welsh was in SMU.

500. Welsh was finally allowed to go to the medical appoint at the urologist after he was released from SMU in 2024.

501. Welsh problems with his urination especially at night causes him to have his sleep distrubed leaving him mental and emotionally unwell and unbalnced.

502. Welsh suffers from extreme mood swings and depression due to his lack of sleep.

503. Welsh had been diagnosised with bilatera nueropathy.

504. Welsh had made several complaints to Dr. Brunslow.

505. While Welsh was in SMU Dr. Brunslow refused to meet with Welsh over the issue not being allowed to go to medical.

506. Later, after Welsh's release from SMU Dr. Brunslow statted that Welsh is not allowed to go see a specialist because that has to be approved by Management and Training Corporations vice president.

507. Brunslow stated due to budgetary and logistcal reasons Welsh is being denied the specialist claiming that Cancer patients are in greater need and the TCCC are not approved the money or resources to take Welsh to the specialist.

508. Welsh is in extreme pain in his limbs both handsa and arms constantly.

509. This is also pervassive at night due making Welsh wake up at all hours in pain.

510. The totality of Welsh problems with his urination snd neuropathy  at night causes him to have his sleep distrubed leaves him mental and emotionally unwell and unbalnced.

511. Similarly,the totality  between Welsh's urination,nueropathy and the slamming of the door by MTC staff Welsh did not recieve any sleep for months that was significant even when he was driven to the point of exhaustion and p[assedout.

512. Welsh suffers from extreme mood swings and depression due to his lack of sleep.

513. Additionally, Welsh's mind has been clouded being unable to think correctly or problem solve due to his lack of sleep with the medical issues.

514. On or about August 1, 2023 Pierce slammed Welsh's hand in the food port or otherwise caused Welsh's hand to strick the food port leaving his left hand cut open.

515. Nurse Flood came and cleaned Welsh's hand but recommended that he eceive stiches.

516. Pierce informed Flood that Winckler will not allow him to go to medical to receive the stiches.

517. Flood stated that she will have brunslow come down to SMU and give Welsh stiches.

518. Winckler refused to allow Brunslow to give Welsh stiches.

519.   MTC hired an Unknown First Name Turner to do security at the TCCC.

520.   During Turner training the MTC trainer, instructed Turner that the proper way to do a pat search was to go around an SVP's waist, up his legs, and then take the underside of the hand and feel around the genital area.

521.   On 9/6/22 Turner was in SMU as part of his on the job training.

522.   Turner was instructed by MTC staff Renfro to conduct the pat search as Welsh entered his room.

523.   Renfro instructed Turner to do this despite Welsh's protest that Renfro had searched Welsh when he left the room and had eyes on Welsh the entire time.

524.   Turner did go around Welsh's waist with his fingers, up his legs with the palm of his hands and then took the underside of his hands a felt around Welsh's genital area.

525.   Welsh immediately turned and stopped the search process as this violated Welsh's personal private area.

526.   Welsh was and felt sexually assaulted as never has any individual even in the Texas Department of Criminal Justice felt his genital area.

527.   Turner did not believe  that Welsh was in possession of contraband and the search is carried out by a blanked MTC policy to harass Welsh when he leaves or enters his cell regardless if Welsh or another SVP in the SMU area never left the site of MTC staff and under constant surveillance by staff and camera.

528.   MTC's SMU policy is designed to harass the SVP by conducting blanketed pat searches when entering or exiting a cell despite the fact that the MTC staff has constant observation of Welsh and never have they found any contraband material on Welsh.

529.   MTC SMU policy also requires staff to search the SMU cell on a daily bases that leaves Welsh's cell destroyed and disheveled.

530.   The purpose of the policy is to harass Welsh as a form of punishment while in SMU where the cell search and body search was conducted by Unknown Turner, S. Murphree, Anthony Fraser; Ricardo Nipper, Tylor Swanger; Unknown First Name Cruz (night shift); Joseph Trevino, Michael Perez; Unknown First

Name Titus; Unknown first name Cruz(day shift); S. Carrizales; Juan Rodriguez; Unknown First Name Williams; Val Guerrero; Luis Rayos, Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown first name Valenzuela Unknown First name Loyden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown First Name Villarreal, S. Carrizales, Unknown First Name Tome, Unknown first name Campbell, Unknown first name Collins, Unknown first name Savala, Xavier Guzman; Unknown first name Richardson, Jose Cardenas; Unknown first name McMullen; Unknown first name Hodge; Ricardo Nipper.

531.   Welsh felt humiliated and shammed by the fondling of his private genital area without cause MTC policy and training methods, that should have included but did not include searches based upon reasonable suspicion, not to conduct harassing searches of a cell on a daily bases that leaves a cell disheveled, harassing pat searches despite never leaving an officers site, and searches for the purpose of punishment.

532. Reasonable suspicion is the standard utilized for the purpose of searches for those individuals the government has the power to punish by probation or parole.

533.   Welsh has experienced severe psychological trauma that has resulted in depression, anxiety, fear, and nightmares of recurrent sexual molestation by MTC staff consistent searches and Turner's sexual assault.

.       During Welsh's placement in solitary confinement at the TCCC from May 17, 2022 to December of 2023 Welsh was not provided with sex offender

treatment in accordance with professional judgment by Sex Offender treatment Providers guidelines set by the Texas Administration Code § 810 Council On Sex Offender Treatment Subchapter C. Standards Of Practice.

534.   The Texas Administration Council On Sex Offender Treatment § 810.61 begins with an Introduction to the State Standards of Practice Text These state standards were developed by the council to delineate appropriate assessment and treatment procedures and policies in Texas. These standards address the professional licensing expectations for the assessment and treatment of adult sex offenders and juveniles who commit sexual offenses.

535. The standard under Texas Administrative Code § 810.64 speaks of Assessment and Treatment Standards for Adult Sex Offenders:

(c)     Treatment Standards for Adult Sex Offenders. Licensees shall adhere to the following standards when providing treatment to an adult sex offender:

(1)     cognitive-behavioral or other empirically supported approaches shall be utilized in sex offender treatment groups;

(2)     treatment groups shall not be less than 60 minutes in length with no more than 12 clients per group;

(3)     individual therapy, self-help groups, drug intervention, or other therapies to address and treat individual risk factors and problems specific to the individual shall be used as adjuncts to sexual offense specific group treatment

536.   Welsh was denied group treatment from May 2022 to December of 2023 which also affected his liberty and liberty interest under Texas Health and Safety

Code Sec. 841.0831 that allows for seamless transition to release and allows for less restrictions upon his liberty and property.

537.   Welsh was denied the treatment necessary under professional standards as Rachael Lang and Kevin Winslow purposely used older treatment records that reflected actuarial test scores which were different than the test scores presently used in Welsh's biennial examination to further his treatment goals.

538.   Though MTC policy allows for those in the solitary confinement SMU area to attend group Wayne Schmoker, Angelina Johnson, Powell, and Winckler did deny Welsh treatment under the professional judgment standard and did deny Welsh treatment equal to that of other residents placed in SMU and denied Welsh the interest created by the policy that allows for group treatment while in SMU and for the seamless transition for release under Texas Health and Safety Code Sec. 841.0831.

539.   This had an adverse effect of Welsh's mental health driving him deeply into depression that he will never be released with anxiety and nightmares of his mother dying with him separated by a wall preventing him to say goodbye and to visit her grave.

540. On July 1, 2023 Welsh bonded out from the Lamb County Jail for alleged assault and harassment of a TCCO contractual employee.

541.   MTC employees Geraldo and Carrizales did place Welsh in restraints to transport him from the Lamb County Jail to the TCCC.

542. Upon arrival at the TCCC James Winkler ordered all of Welsh's property that he returned with from the Lamb County Jail to be confiscated to include all his legal work, hygiene to include lotion, soap, shampoo, hair conditioner, and hair pomade, and food items include 9 bags of coffee at a price of $8.25 each 20 bags of tuna at a price of $2.50 each, bottle of hot salsa at a price of $5.25, 1 Peanut Butter Jar at a price of $3.50.

543. Additionally, Welsh was placed upon 24 hour cell restriction, constant restraints if he did leave the cell, restricted from law library access, denied shoes, cleaning supplies, reading books, group treatment, recreation, phone, ability to write letters and visitation privileges.

544. On or about July 6, 2023 officer Geraldo and Murphree did file false disciplinary charges against Welsh for the purpose of retaliation for Welsh bonding out of the Lamb County Jail.

545. This was arranged by Winckler according to Murphree to try and get Welsh placed back in the Lamb County Jail for alleged threats as he believed this would violate Welsh's bond conditions.

546. Sheriff investigator Chris Weston did come to investigate the claims yet found no violation.

547. Winckler did use this as an excuses to go to Schmoker and get approval for 24-hour cell restriction, constant restraints if he did leave the cell, restricted from law library access, denied shoes, group treatment, cleaning supplies, reading books, recreation, phone, ability to write letters and visitation privileges.

548. Welsh was not allowed to attend any BMR disciplinary hearings in connection with these false charges of alleged threats or present witnesses.

549. Jonathan Ackley was willing to testify to what was said at the BMR hearing and even verify and declare  under the penalty of perjury of the truth of what he heard.

550. Welsh also wrote a statement that was never5 reviewed by the BMR panel at the disciplinary hearing.

551.Welsh was also  not allowed to question any officer as a result of not being allowed to attend the hearing.

552. Candy Weaver who came and took the statement and wrote a case of threats based upon the statement that Welsh gave upon the Jeroldo and Murphree false case.

553. Welsh was not allowed to attend this hearing based upon alleged aggressive behavior.

554. Welsh gave a statement that was not reviewed by the BMR panel at the disciplinary hearing.

556. Welsh was also  not allowed to question any officer as a result of not being allowed to attend the hearing.

557. Welsh was also not allowed to question any officer as a result of not being allowed to attend the hearing.

558. Welsh was not allowed to attend this hearing nor was the written statement that he gave upon this case reviewed by the BMR panel at the disciplinary hearing.

559. The bonding of Welsh back to the TCCC was not Winckler only cause to retaliate against Welsh.

560. On the day Welsh left for the County Jail on or about May 25th 2023 Welsh was being escorted by a Lamb County Sheriff Officer having been official arrested.

561. On that day Welsh seen the Law Liberian Mrs. Carpenter on the sidewalk being escorted to the Sheriff vehicle to be taken to the jail.

562. Welsh had given Carpenter a nine-page declaration of facts on the treatment Lonnie Kade Welsh had observed leading up to the death of Larry Johnson to be copied so he could see the declaration of to important people of interest.

563. Carpenter Stated that she did not have the declaration that Winckler wanted that declaration.

564. Welsh asked her why does he have it and she was non-verbal in the exchange.

565. This exchange was captured on the Lamb County Sheriff officers body worn camera.

566. Upon Welsh's return to the TCCC from the Lamb County Jail Welsh asked Winckler where the declaration was so he could have submitted the declaration.

567. Winckler claimed he destroyed the declaration.

568. On  July 3, 2023 Welsh inquired about his legal flash drive that contained all his legal work upon the drive.

569. This was before Welsh was written those false cases by Jeroldo and Murphree for threats.

570. It was told to Welsh that IT Ramirez had the drive.

571. I asked why does IT have the drive because it was supposed to be located at the law library waiting for Welsh to return.

572. I asked if the drive could be brought to me.

573. This was denied by Stetson Fisher.

574. After I had met with Fisher asking for the drives is when Jeroldo and Murphree wrote the false disciplinary reports.

575. For several weeks Welsh continued to ask for his legal flash drive to be brought to him by IT Ramirez.

576. When asked why he had reviewed Welsh's legal material outside of his presence Ramirez informed Welsh that Winckler had instructed him to look through the drive for any further declarations on Larry Johnsons' death.

577. After several weeks Ramirez claimed that all the information was destroyed and was unable to be retrieved.

578. Ramirez purposely destroyed all of Welsh's legal papers that contained almost a decade of legal research and specifically Welsh's notes of the 6 months prior to Larry Johnson's death

579. When asked if I could see the flash drive to verify if the drive was truly blank or to send it home Wayne Schmoker threatened Welsh telling him that he would constantly write him cases, Welsh then covered his window to not talk to Schmoker any longer.

580. This is a common practice at the TCCC with every Civilly Committed individual covering his window for privacy while using the bathroom.

581. Furthermore, Welsh was in between the 15 minute checks that is required to identify if Welsh was safe by MTC security regulations.

582. Later that evening Welsh was trying to discuss the situation with Correa.

583. Correa wrote Welsh a case for failing to obey orders but Correa never gave Welsh an order.

584. Welsh was not allowed to attend either hearing for covering the window or the failure to obey orders from Correa.

585. Welsh also asked for the video to be presented at the hearing showing that Correa never gave Welsh an order.

586. Welsh also was going to present the testimony of Val Gurrerro an MTC security who did witness the whole exchange between Correa and Welsh.

587. Nor was Welsh's written statements read at the BMR disciplinary hearing.

588. Welsh was also not allowed to question any officer as a result of not being allowed to attend the hearing.

589. As a result of the retaliation that destroyed Welsh's legal work, his legal affidavits, removed contact with his family which included all phone, letters, and visitation, 24 hour lockdown, denial of recreation, the constant restraints when Welsh left the cell, denied reading books, denial of shoes, denial of hygiene, feed him differently than all others (by Douglas Radford) in solitary confinement the false disciplinary cases that included a 180 day package restriction, denial of group treatment, denial of phone, ability to write letters, visitation and denial of access to a law library Welsh stopped trying to inform others of the death of Larry Johnson

and will never bond out from the county jail and return to the TCCC facility
pending criminal charges and stopped writing grievances

590. Between July and August Welsh received multiple cases for assaulting staff.

591. Welsh was never allowed to attend the BMR disciplinary hearings, Schmoker,
Winckler and Angelina Johnson claimed that it was because of Welsh's assaultive
behavior.

592. However, no attempts were made to place Welsh in restraints to attend the
BMR either front with a belly chain or rear restraints both with leg restraints to
insure safety of anyone.

593. Welsh has been accused of assaulting staff in the past but was allowed to
attend the BMR hearing with restraints.

594. Welsh also gave written statements for his defense and to mitigate any
punishment that was not reviewed by the BMR panel.

595. Welsh was also  not allowed to question any security staff who wrote the as a
result of not being allowed to attend the hearing.

596. The BMR's are used in connection to continue Welsh's civil commitment
being presented through his Biennial Review under Texas Health and Safety Code
841.102.

597. Winslow, D. Shelby, R. Lang, Wilson, Pittock or Sandoval  did not use professional judgement in connection with the BMR's but solitary confinement is not considered part of treatment. See Texas Admin Code 415 sub Ch. F.

598. Failure to follow institutional rules is part of the behavioral abnormality and Welsh's mental illness and is used at civil commitment trails as proof of the behavioral abnormality.

599. Welsh was also not permitted to see a medical specialist for his problems with urination and his crippled wrists.

600. On 7-8-23 Welsh discussed with Angelina Johnson and Schmoker about his crippled wrist diagnosed with bilateral neuropathy and how the constant restraints harm him.

601. Both Angelina Johnson and Schmoker refused to allow Welsh to see medical to get a pass not to be put into restraints both stated they don't care if the restraints causes Welsh pain and aggravated his injured wrists.

602. On December 24, 2023 Welsh was assaulted by MTC Sanchez with the door leading into the Bravo 2 dormitory.

603. Sanchez did take the door and shove the door hard into Welsh's sternum and did scrape his toes with the door bottom.

604. This caused Welsh pain in his sternum and toes and made Welsh loss his breathing momentarily due to the placement of the blow.

605. When Sanchez attempted to push the door again into Welsh, Welsh did push Sanchez away from the door to prevent any further injuries.

606. Welsh asked to call the cops.

607. Security Captain James Cruz did write Welsh a case for assault on security but left Welsh in Bravo 2.

608. The next day Welsh approached Angelina Johnson about calling the police.

609. Johnson informed Welsh that they would drop the disciplinary case if Welsh would not call the cops.

610. Johnson informed Welsh that she will make sure he is found guilty at the BMR and make it were he would no longer have contact with his family if he goes through with calling the cops.

611. Welsh did call Lamb County Sheriff Investigator Armstrong who took a report.

612. Johnson did then hold disciplinary hearings against Welsh.

613. Welsh was not allowed to attend the hearing.

614. Staff claimed he refused but it was setup by Johnson and Winckler not to allow Welsh in the hearing.

615. As a result Welsh was not allowed to present any evidence or question the charging MTC security employee of the events on 12/24/23.

616. When Welsh was released from solitary confinement on December 18, 2023 Welsh was allowed his Television.

617. Welsh has not had possession of his Television since 2017.

618. Welsh was also placed into a crowded dormitory that consisted of 14 men including Welsh that did not have 25 sq. feet of living space per individual.

619. Welsh seen physic for the first time in years to talk about his mental health and how the dormitory affected his sleep and mood.

620. The physiatrist Dr. Hoffman recommended that Welsh be moved from a two-man cell.

621. Security moved Welsh to a two man cell.

622. However, when Winckler discovered that Welsh was moved he came to confiscated Welsh's TV.

623. During the confiscation Welsh asked for the police to be called because the taking of Welsh's TV is theft and Winckler had no lawful authority to take Welsh's TV.

624. Welsh gave a report to Lamb County that night which was a Thursday.

625. The following Monday Lamb County Investigator Armstrong did a follow up with Welsh.

626. One hour after Welsh meet with Armstrong Welsh was served a case claiming that he threatened Adam Pierce when MTC took the TV.

627. This case was written by an Unknown TCCO agent but was written of the behalf of Lisa Peralta who did serve Welsh with the case.

628. Welsh explained to Peralta that he did nothing wrong that if he threatened Pierce then Pierce should have written the case.

629. Welsh told her that they are just mad because he called the cops and that is what he is supposed to do instead of acting badly in other ways.

630. Peralta then also wrote Welsh a threat case served the next day.

631. That same day Welsh went to see Peralta in her TCCO office to make sure she understood that the cops had just came and saw Welsh about an hour before the case was written.

632. Welsh was told by MTC McMullen that MTC Angelina Johnson was upset about the cops being called and was going to give him a case and recruited Peralta in writing the case.

633. When Welsh went to the BMR for the alleged threats of Adam Pierce, Pierce did serve on the BMR panel.
Pierce told the Panel that the incident report is taken out of context that Welsh did not threaten anyone and that the case should be dismissed.

634. TCCO's case manager Unknown first name Clum did refuse to drop the case and the case was rescheduled for a different BMR panel to hear.

635. On or about January 31 of 2024 Winckler, Greenwalt and Morrow served on the BMR panel that heard the case of the alleged Pierce threat and the alleged Peralta threat when she served Welsh the case for Pierce.

636. Welsh was not allowed to call Pierce as a witness. However, the grievance coordinator Rodriguez did state for the panel that Pierce stated that Welsh did not threaten anyone and that the report is being taken out of context.

637. Welsh also requested that the video be shown for the alleged Peralta threats because Peralta claimed Welsh jumped in her face making threats.

638. Welsh was not allowed to show the video or question Peralta on her version of the events.

639. Welsh did not threaten Pierce or Peralta and the cases were enforced out of retaliation for Welsh calling the police about his stolen TV set instigated by Johnson and carried out by Peralta.

640. Welsh was given 15 days' recreation restriction and 15 days' phone restriction.

641. Welsh did after the case tell Winckler and Greenwalt that this was bullshit.

642. Winckler and Greenwalt claimed that Welsh said this is Bullshit and you all can go fuck yourself.

643. Welsh never said the last part and the case was part of the retaliation that Welsh has suffered because he filed suit against the oppressive living conditions in SMU in the Western District, for calling the cops about his stolen TV set and for his speech period.

644. Others at the TCCC curse all the time without receiving a case and is subjectively based.

645. Welsh received 15 days' visitation restriction at the BMR hearing when Welsh said this is Bullshit.

646. Welsh also was not allowed to question Winckler or Greenwalt about their version of the events.

647. Neither did the panel state what evidence it relied on to find Welsh guilty.

648. On February 13, 2023 Welsh received a case for unauthorized contact with another resident Steven Hayes.

649. Welsh did pushed Steven Hays after Hays purposely ran into Welsh with a carpet shampooer.

650. Welsh naturally reacted to Hayes running into him.

651. Hayes did not receive a case for the same conduct.

652. Welsh and Hayes are similarly situated in all respects.

653. Welsh received 15 days dorm restriction.
On 10-6-23 the Fifth Circuit issued a ruling in the Welsh v. Unknown Male Shift Supervisor case 23-10171 and mailed the ruling to Welsh and mailed the ruling to Welsh on the same day.

654. Darla Jennings who is in charge of the legal mail failed to deliver the mail to Welsh.

655. Welsh was injured by not being able to address with the court on a motion to reconsider the denial of the mail box rule which was contrary to circuit precedents and long standing 5th circuit rules applied to those who are incarcerated to some degree.

656. On 12-20-23 the 5th Circuit issued an opinion in the Welsh v. Abbot case 23-50492 and mailed the ruling to Welsh on the same day.

657. Darla Jennings delayed giving Welsh the mail until January 15, 2023.

658. This injured Welsh by not allowing him to move the court for reconsideration on the opinion and for the sanctions warning.

659. The case fits the criteria for the full court to review due to circuit splits in the application of law if a 42 U.S.C. 1983 would apply to a criminal case when a 28 U.S.C. 2254 is no longer available to him.

660. This would also meet the definition of a non-frivolous legal claim, therefore, preempting the warning issued by the court.

661. In Welsh v. McLane the Fifth Circuit issued on 1-16-24 briefing notice due date of 2-26-24. Welsh never received the mail from Jennings and did not find out of the due date until 2-22-23 at 9 p.m. at night.

662. Welsh was not able to present his brief to the court therefore he had to abandon his claims.

663. In Welsh v. Thorne the Fifth Circuit issued on 1-18-24 briefing notice due date of 2-27-24. Welsh never received the mail from Jennings and did not find out of the due date until 2-22-23 at 9 p.m. at night.

664. Welsh was not able to present his brief to the court therefore he had to abandon his claims.

665. On Jennings had numerous times refused to timely give Welsh his legal mail withholding legal mail several times from several different District Courts and Texas Appellate Courts from July of 2023 to February of 2024.

666. Jennings informed Welsh that she was delaying Welsh's legal mail because he wrote communication forms, grievances and complaining to shift captains on her about retaliating against him for making bond by withholding his clothing and hygiene.

667. The exact dates for the held legal mail are discoverable as Welsh had inquired upon the missing items and when they were delivered are reflected upon the legal mail sign in sheet.

668. When the mail was delayed Welsh noted the delay on the sign in sheet and Welsh had always signed when he received his mail. A blank spot means that the mail was not delivered. To include but not limitted to July 10; Oct. 16,24,27,30; Aug 15, of 2023.

669. Because Welsh was writting grievances on Jennings for the denial of legal mail, the denial of my legal flash drive and not being able to attend law library Carpenter refused to make me legal copies of needed case laws claiming that she could not find them though they were clearly stated.

670. Carpenter is not a trained legal assistant.

671. Carpenter had priviously conspired with Jennings on 5-3-23 to tamper with Welsh's food.

672. Carpenter caim and told Welsh o0n 5-3-23 that Jennings was inquiring how his food tasted.

673. Welsh tried to send is playstation to his mother.
Jennings denied this several times until Welsh wrote two grievances.

674. It was approved to send home on 5-24-23.

675. Jennings had Ramirez tampered with the Playstation removing its power supply and memory core.

676. This was done because Jennings asked Welsh to donate the Playstation to a local childrens home which Welsh refused.

677. Jennings told Welsh that she had Ramirez do this and when the Playstation arrived at Welsh's mother's address the playstation which did work when Welsh requested to send it home when it arrived it no longer worked with the back plate removed from the Playstation being tamppered with.

678.. MTC polices and the individual actions of MTC"s staff does have a mutually enforcing effect that constitutes punishment by the totality of the conditions that denied of personal property and reading material other than legal in the solitary confinement in SMU from May 17, 2022 to December 2023, the

diminished recreation time in SMU; the lack of activates in SMU despite institutions like TDCJ providing equipment for recreation in their punishment scheme; the package denial from March 5, 2022 to present day, the commissary denial from March 5, 2022 to present day without procedural due process, the denial of due process and the punishment by restraints from May 31, 2022 to October 1, 2022; _____ ;the use of OC spray on the use of OC spray on May 31, 2022 and April 25, 2023; the policy that allows force outside of the Texas Health and Safety Code 841.0838 and the contractual provisions for the use of force between MTC and TCCO; the search policy by MTC; the constant harassment day and night by MTC staff making loud unnecessary noise; the restrict access to knowledge and information in the form of books and law library access; the constant retaliation by staff, the daily room searches that leave Welsh's housing area destroyed; and the sexual assault during the pat search by Turner.

## VI.   Claims Against Defendants

### Count I
### Violation Of Fourteenth Amendment State Created Liberty Interest

679. Wayne Schmoker; John Powell; James Winckler; Adam Pierce, Z. Salavar, J. Pearson,  Unknown first name Guzman (night shift),, James Cruz, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Correa; Stetson Fisher,  A. Frasier , Ricardo Nipper, Tylor Swanger; Unknown First Name Cruz (night shift) ; Joseph Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L.

Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz
(day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez, Unknown
first name McMullen, Unknown first name Cruz, Jose Ramierez, and Jose Solis did
place Welsh in cuffs on a daily basis if Welsh left the cell for any reason which and
to continuously while Welsh was outside of the cell in violation of Welsh's state
created liberty interest under Texas Health and Safety Code 841.0838 and the
MTC/TCCO contract under the use of force provision protected by the procedural
due process clause of the Fourteenth Amendment incorporated herein as alleged
under the facts of the complaint.


### Count II
### Violation Of Fourteenth Amendment State Created Liberty Interest
680. MTC through its agents Sergio Molina;  Wayne Schmoker;  A. Johnson and
John Powell; did violate Welsh's state created liberty interest under Texas Health
and Safety Code 841.0838 and the MTC/TCCO contract under the use of force
provision by creating and promulgating a policy contrary to the liberty interest
protected by the procedural due process clause of the Fourteenth Amendment
incorporated herein as alleged under the facts of the complaint.


### Count III
### Violation Of The Fourteenth Amendment Excessive Use Of Force
681. Wayne Schmoker; John Powell; James Winckler; Adam Pierce, James Cruz,
Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown
first name Correa; Stetson Fisher , Z. Salavar, J. Pearson,  Unknown first name
Guzman (night shift), S. Murphree, Anthony Frasier ,Ricardo  Nipper, Tylor
Swanger; Unknown First Name Cruz (night shift); Joseph Trevino, Michael Perez;
Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez;

Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Lorden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; did use excessive force by applying the hand restraints that caused Welsh significant injury by cutting into his flesh leaving permeate scars and aggravating Welsh's bilateral neuropathy that was aggravated through the use of restraints incorporated herein as alleged under the facts of the complaint.

## Count V
## Violation Of The United States Fourteenth Amendment Professional Medical Judgment To Use Restraints

682. MTC did by policy, Wayne Schmoker; John Powell; James Winckler; Adam Pierce, James Flick,  James Cruz,  Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Correa; Z. Salavar, J. Pearson, Unknown first name Guzman (night shift),Stetson Fisher;  S. Murphree, Anthony Frasier ,Ricardo Nipper , Tylor Swanger; Unknown First Name Cruz (night shift); Joseph Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Leyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapa Rodriguez before he was a supervisor; UnKnown name McMullen, Unknown name Cruz (day shift); Jose Ramirez, and Jose Solis did punish Welsh by the use of mechanical restraints as it was under inclusive in violation of Welsh's substantive and procedural right under the due

process clause to have a trained medical professional decided the use of mechanical restraints  incorporated herein as alleged under the facts of the complaint

### Count V
### Violation Of The United States Fourteenth Amendment Punishment

683. Wayne Schmoker; John Powell; James Winckler; Adam Pierce, James Flick, James Cruz,  Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Correa; Z. Salavar, J. Pearson,  Unknown first name Guzman (night shift),Stetson Fisher;  S. Murphree, Anthony Frasier ,Ricardo Nipper , Tylor Swanger; Unknown First Name Cruz (night shift); Joseph Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Leyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapa Rodriguez before he was a supervisor; UnKnown name McMullen, Unknown name Cruz (day shift); Jose Ramirez, and Jose Solis did punish Welsh by the use of mechanical restraints as it was under inclusive in violation of Welsh's substantive due process rights incorporated herein as alleged under the facts of the complaint

### Count VI
### Violation Of The United States Fourteenth Amendment Punishment

684. MTC, John Cochran; Wayne Schmoker; John Powell; Angelina Johnson and James Winckler did impose a policy to punish Welsh by the use of the mechanical restraints without procedural due process rights before or during punishment incorporated herein as alleged under the facts of the complaint.

## Count VII

## Violation of United States Fourteenth Amendment Failure To Train

685 .  MTC, Wayne Schmoker; John Powell; Angelina Johnson, and James Winckler did have a duty to train its employees in the use of mechanical restraints that should have included but did not include the use of said restraints as a last resort, necessary to stop or prevent imminent physical injury to a committed person or another in violation of Welsh's procedural due process rights before or during punishment incorporated herein as alleged under the facts of the complaint.

## Count VIII
## Violation of State Tort Law Negligence

686.  MTC through respondent superior; Wayne Schmoker; John Powell; Angelina Johnson James Winckler;  Adam Pierce,Z. Salavar, J. Pearson, Unknown first name Guzman (night shift), James Flick, James Cruz,  Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Correa; Stetson Fisher, S. Murphree, Anthony Frasier , Ricardo Nipper, Tylor Swanger;  Unknown First Name Cruz (night shift); Joseph  Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; Lewis Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; Unknown name McMullen, Jose Ramirez, and Jose Solis did have a duty not to use force under the

contract between MTC/TCCO unless in self-defense incorporated herein as alleged under the facts of the complaint.

## Count IX
## Violation of State Tort Law Negligence Per Se

687.   MTC through respondent superior Wayne Schmoker; John Powell; James Winckler; Angelina Johnson,  Adam Pierce, James Flick, Adrian Flores,  James Cruz, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Correa; Stetson Fisher; S. Murphree, Anthony Frasier , Ricardo Nipper, Tylor Swanger;  Unknown First Name Cruz (night shift); Joseph Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Siena; Unknown First Name Williams; Chapo Rodriguez, Unknown name McMuyllen, Jose Ramirez, and Jose Solisbefore he was a supervisor; did have a duty not to use force created by state law Texas Health and Safety Code 841.0838 incorporated herein as alleged under the facts of the complaint.

## Count X
## Violation of State Tort Law Negligence Training

688.   MTC did fail to train Wayne Schmoker; John Powell; A. Johnson, James Winckler; Adam Pierce, Z. Salavar, J. Pearson,  Unknown first name Guzman (night shift), James Flick, James Cruz, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name

Correa; Stetson Fisher, S. Murphree, Anthony Frasier , Ricardo Nipper, Tylor Swanger; Unknown First Name  Cruz  (night  shift);  Joseph  Trevino,  Michael Perez; Unknown First Name Titus;  Xavier  Guzman;  S.  Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez, Unknown first name McMullen, Jose Ramirez, and Jose Solis before he was a supervisor; in their duty under the use of force provision of the MTC/TCCO contract and the Texas Health and Saftey Code 841.0838 incorporated herein as alleged under the facts of the complaint.

## Count XI
### Violation of State Tort Law Negligence Supervision

689.  MTC did fail to supervise; Wayne Schmoker; John Powell; James Winckler; A. Johnson, Adam Pierce, James Flick, Z. Salavar, J. Pearson, Adrian Flores, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Correa; Stetson Fisher, Anthony Frasier , Unknown first name Guzman (night shift)Ricardo  Nipper , Tylor Swanger; Unknown First Name Cruz (night shift) ; Joseph Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez, Unknown name McMullen, Jose RaMIREZ, AND Jose Solis

before he was a supervisor; in their duty under the use of force provision of the MTC/TCCO contract uincorporated herein as alleged under the facts of the complaint.

## Count XII
### Violation of State Tort Law Negligence Supervision

690.   MTC did fail to supervise Wayne Schmoker; John Powell; James Winckler; Jonson, Adam Pierce,  Z. Salavar, J. Pearson, James Flick, Adrian Flores, James Cruz, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Correa; Stetson Fisher, Michael Arenivaz, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree, Anthony Frasier , Ricardo Nipper, Tylor Swanger; Unknown First Name Cruz (night shift) ;  Unknow first name Guzman (nightshift), Joseph  Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; Unknown first name McMullen, Jose Ramirez, and Jose Solis had a duty to supervise under the use of mechanical restraints provision of the Texas Health and Safety Code 841.0838 incorporated herein as alleged under the facts of the complaint.

## Count XIII
### Violation of State Tort Law Assault Bodily Injury

691.   MTC through respondent superior;  Adrian Flores,  S. Murphree, Anthony Frasier , Ricardo Nipper, Tylor Swanger; Unknown First  Name  Cruz (night shift);  Joseph  Trevino,  Unknown first name Guzman (nightshift), Michael Perez; Unknown first Name  Titus;  Xavier  Guzman;  S.  Carrizales;  Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; Unknown first name Cruz (day shift); Unknown name McMullen, Jose Ramirez, and Jose Solisdid assault Welsh in accordance to Texas Penal Code 22.0l(a)(l) incorporated herein as alleged under the facts of the complaint.


## Count XIV
## Violation of State Tort Law Assault by Offensive Physical Contact

692.   MTC through respondent superior;  Adrian Flores, S. Murphree, Anthony Frasier , Unknow first name Guzman (night shift,), Ricardo Nipper, Tylor Swanger; Unknown  First Name  Cruz (night  shift);  Joseph  Trevino,  Michael Perez; Unknown first Name  Titus;  Xavier  Guzman;  S.  Carrizales;  Juan Rodriguez; Unknown First Name Williams; V. Gurrerro; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor;  Unknown first name Cruz, Unknown first name McMullen, Jose Ramirez, and Jose Solisdid assault

Welsh in accordance to Texas Penal Code 22.0l(a)(3) incorporated herein as alleged under the facts of the complaint.

## Count XV
### Violation of State Tort Law Assault by Threat

693.   MTC through respondent superior;  Wayne Schmoker; John Powell; James Winckler; A. Johnson, Adam Pierce, Z. Salavar, J. Pearson, James Cruz, S. Carrizales, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Correa; Stetson Fisher,  did assault Welsh in accordance to Texas Penal Code 22.0l(a)(2) incorporated herein as alleged under the facts of the complaint.

## Count XVI
### Violation Of State Tort Law Fiduciary Duty

694. MTC did fail to supervise Wayne Schmoker; John Powell; James Winckler; A. Johnson, Adam Pierce, Adrian Flores, Z. Salavar, J. Pearson, James Cruz, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Correa; Stetson Fisher,  S. Murphree, Anthony Frasier , Ricardo Nipper, Tylor Swanger;  Unknown First Name Cruz (night shift); Joseph  Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapa Rodriguez before he was a supervisor; Unknown first name McMullen, Jose Ramirez, and Jose Solisin their duty through the formal and informal relationship

between them and Welsh to use of mechanical restraints provision of the Texas Health and safety Code 841.0838 and the MTC/TCCO contract incorporated herein as alleged under the facts of the complaint.

## Count XVII
## Violation of State Tort Law Negligence

695.   MTC through respondent superior, James Winckler and James Person were negligent in maintaining the security equipment mechanical restraints that consistently caused Welsh pain incorporated herein as alleged under the facts of the complaint.

## Count XVIII
## Violation of the United States Fourteenth Amendment Failure to Protect

696.   Chris Greenwalt, Lisa Peralta, Derek Porter, Kendrick Fennell, and Unknown first name Clum did fail to protect Welsh from being punished by the restraint restriction or the liberty interest in the freedom from restraint under the Texas Health and Safety Code 841.0838 under the facts of the complaint

## Count XIX
## Violation Of United States Constitutional Fourteenth Amendment Excessive Force

697.   James Winckler, James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Jose Cardenas did use excessive force against Welsh incorporated herein as alleged under the facts of the complaint.

## Count XX
### Violation of the United States Constitutional
### Fourteenth Amendment Punishment

698.   MTC did by the use of force policy and James Winckler, James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Unknown name Cardenas did by practice punish Welsh by the use of the chemical spray incorporated herein as alleged under the facts of the complaint.

## Count XXI
### Violation of the United States Constitutional
### Fourteenth Amendment Punishment

699.   James Winkler did punish Welsh when he refused to allow him to decontaminate his body from the OC spray and shutting off his water incorporated herein as alleged under the facts of the complaint.

## Count XXII
### Violation of the United States Constitutional Fourteenth Amendment
### State Created Liberty Interest

700.   MTC did by the use of force policy and James Winckler, James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Unknown name Cardenas did by practice violate Welsh's rights under the Texas Health and Safety Code 841.0838 and MTC/TCCO contract incorporated herein as alleged under the facts of the complaint.

## Count XXIII
### Violation of the United States Fourteen Amendment
### Professional Judgment For The Use Of Restraints

701.   MTC did by the use of force policy and James Winckler, James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Unknown name Cardenas did

by practice violate Welsh's substantive right to the use of professional clinical judgment before the application of chemical restraints incorporated herein as alleged under the facts of the complaint.

## Count XXIV
## Violation of the United States Constitutional Fourteenth Amendment Failure to Train

702 .   MTC failed to train and supervise James Winckler , James Pearson, Chapa Rodriguez, Unknown First name Saenz, and Unknown name Cardenas in the obvious need that OC spray a weapon and intermediate force should of included recognizing when to use OC spray as a last resort and necessary to stop or prevent imminent physical harm to another person and to use ascending force to first use skill in maneuvers to gain compliance from passive aggressive SVP committed individuals incorporated herein as alleged under the facts of the complaint.

## CountXXV
## Violation of State Tort Law Assault Causing Bodily Injury

703.   MTC through respondent superior, James Winckler, James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Jose Cardenas did assault Welsh causing bodily injury in accordance with Texas Penal Code 22.0l(a)(l) under the facts of the complaint

## Count XXVI
## Violation of State Tort Law Assault By Threat

704.   James Winkler did make the threat to use OC spray against welsh that Pearson carried out in accordance to Texas Penal Code 22.0l(a)(2) incorporated herein as alleged under the facts of the complaint.

## Count XXVII
## Violation of State Tort Law Assault by Offensive Physical Contact

705.   MTC through respondent superior, Chapa Rodriguez, Unknown First name Saenz, and Jose Cardenas did assault Welsh in accordance to Texas Penal Code 22.0l(a)(3) incorporated herein as alleged under the facts of the complaint.

## Count XXVIII
## Violation of State Tort Law Unlawful Interference With Utility

706. MTC through respondent superior and James Winckler did unlawfully interfere with Welsh's water to prevent him from decontaminating his body from the OC spray incorporated herein as alleged under the facts of the complaint.

## Count XXIX
## Violation of State Tort Law Negligence

707.   MTC through respondent superior, James Winckler, James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Jose Cardenas were negligent in their duty to apply the MTC/TCCO contract use of force provision incorporated herein as alleged under the facts of the complaint.

## Count XXX
## Violation of State Tort Law Negligence Per Se

708.   MTC through respondent superior, James Winckler, James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Jose Cardenas were negligent in their duty to apply the Texas Health and Safety Code 841,0838 incorporated herein as alleged under the facts of the complaint.

## Count XXXI
## Violation of State Tort Law Negligent Training

709. MTC was negligent in their training of James Winckler, James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Jose Cardenas were negligent in their duty to train their employees under the MTC/TCCO contract use of force provision incorporated herein as alleged under the facts of the complaint.

## Count XXXII
### Violation of State Tort Law Negligent Supervision

710. MTC was negligent in their supervision of James Winckler, James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Jose Cardenas were negligent in their duty to supervise their employees under the MTC/TCCO contract use of force provision incorporated herein as alleged under the facts of the complaint.

## CountXXXIII
### Violation of State Tort Law Negligent Training

711.  MTC was negligent in their training of James Winckler , James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Jose Cardenas were negligent in their duty to train their employees under Texas Health and Safety Code 841,0838 incorporated herein as alleged under the facts of the complaint.

## Count XXXIV
### Violation of State Tort Law Negligent Supervision and Hiring

712.  MTC was negligent in their supervision of James Winckler, James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Jose Cardenas were negligent in their duty to supervise their employees under the Texas Health and Safety Code 841.0838 incorporated herein as alleged under the facts of the complaint.

## Count XXXV
## Violation of State Tort Law Fiduciary Duty

713.   MTC through respondent superior, James Winckler, James Pearson, Chapa Rodriguez, Unknown First name Saenz, and Jose Cardenas did assault Welsh did violate its fiduciary duty to Welsh both formal and informal to follow the MTC/TCCO contract use of force provision, to follow the Texas Health and Safety code 841.0838, not to use excessive force, not to assault Welsh and to allow him to decontaminate incorporated herein as alleged under the facts of the complaint.

## Count XXXVI
## Violation of United State Constitutional Fourteenth Amendment Punishment Without Procedural Due Process

714. Wayne Schmoker did punish Welsh by denying him visitation that was not given to him as a sanction in violation of his procedural due process rights incorporated herein as alleged under the facts of the complaint.

## Count XXXVII
## Violation of State Tort Law Negligent Training

715. MTC was negligent in its training of Wayne Schmoker in how to impose disciplinary without procedural due process and not to over punish or punish outside of the sanction given at a disciplinary hearing uincorporated herein as alleged under the facts of the complaint.

## Count XXXVIII
## Violation of State Tort Law Negligent Supervision and Hiring

716. MTC was negligent in its supervision of Wayne Schmoker who did impose disciplinary without procedural due process and not to over punish or punish outside of the sanction given at a disciplinary hearing and failed to uncover Schmokers personality traits that causes him to vidictively punish individuals in a treatment facilty and his general hatered towards sexual offenders incorporated herein as alleged under the facts of the complaint.

## Count IXL

## Violation of State Tort Law Fiduciary Duty

717. MTC through respondent superior, Wayne Schmoker did have a duty to impose only the sanctions leveled against Welsh in a disciplinary hearing and not over punish him through formal and informal relationship with Welsh incorporated herein as alleged under the facts of the complaint

## Count XL
## Violation of The United States Fourteenth Amendment Procedural Due Process Clause Punishment

718.  MTC did by policy and Kendrick Fennel, Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's procedural due process rights to notice incorporated herein as alleged under the facts of the complaint.

## Count XLI

**Violation of The United States Fourteenth Amendment**
**Substantive Due Process Clause Punishment**

719. MTC did by policy and Kendrick Fennel, Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's substantive due process by excessive punishment and false disciplinary rights incorporated herein as alleged under the facts of the complaint.

**Count XLII**
**Violation of State Tort Law Negligent Training**

720. MTC was negligent in its training of James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker in how to impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

**Count XLIII**
**Violation of State Tort Law Negligent Supervision**

721. MTC was negligent in its supervision of James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker who did impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

**Count XLIV**
**Violation of State Tort Law Negligent Hiring**

722. MTC was negligent in its hiring of James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker for failing to uncover his vindictive personality flaws incorporated herein as alleged under the facts of the complaint.

**Count XLV**
**Violation of State Tort Law Fiduciary Duty**

723. MTC through respondent superior, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did have a duty not to excessively punish Welsh under false pretenses through the formal and informal relationship with Welsh incorporated herein as alleged under the facts of the complaint.

## Count XLVI
### Violation Of State Tort Law Abuse Of Process

724. MTC through respondent superior, James Pearson, James Winckler, Stetson Fisher, Sahra Sooter and Wayne Schmoker did abuse the disciplinary process as part of Welsh's civil commitment order to bring about punishing Welsh under false pretenses incorporated herein as alleged under the facts of the complaint.

## Count XLVII
### Violation of United States Constitutional Fourteenth Amendment Procedural Due Process Clause To Clinical Professional Judgment

725. MTC did by policy and Kendrick Fennel, Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's procedural due process rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms incorporated herein as alleged under the facts of the complaint.

## Count XLVIII
### Violation of The United States Fourteenth Amendment Substantive Due Process Clause To Clinical Professional Judgment

726. MTC did by policy and Kendrick Fennel, Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical

judgment as solitary confinement for 110 days is outside professional norms
incorporated herein as alleged under the facts of the complaint.

## Count LIX
## Violation of The United States Fourteenth Amendment
## Procedural Due Process Clause Punishment

727. MTC did by policy and Candy Weaver, Chris Greenwalt, James Pearson,
James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by
practice violate Welsh's procedural due process as the hearing was a shame rights
incorporated herein as alleged under the facts of the complaint.

## Count L
## Violation of The United States Fourteenth Amendment
## Substantive Due Process Clause Punishment

728.  MTC did by policy and Candy  Weaver,  Chris Greenwalt, James Pearson,
James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker  did by
practice violate Welsh's substantive  due process   rights to professional clinical
judgment as solitary confinement for 110 days is outside professional norms
incorporated herein as alleged under the facts of the complaint.

## Count LI
## Violation of United States Constitutional Fourteenth Amendment
## Procedural Due Process Clause To Clinical Professional Judgment

729. MTC did by policy  and  Candy  Weaver,  Chris Greenwalt, James Pearson,
James Winckler, Stetson Fisher,  Sahar Sooter  and Wayne Schmoker did by
practice violate Welsh's procedural due process rights to professional clinical

judgment as solitary confinement for 110 days is outside professional norms incorporated herein as alleged under the facts of the complaint.

## Count LII
## Violation of The United States Fourteenth Amendment
## Substantive Due Process To Clinical Professional Judgment

730. MTC did by policy and Candy weaver, Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms incorporated herein as alleged under the facts of the complaint.

## Count LIII
## Violation of State Tort Law Negligent Training

731.  MTC was negligent in its training of Candy Weaver, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker in how to impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

## Count LIV
## Violation of State Tort Law Negligent Supervision

732.  MTC was negligent in its supervision of Candy Weaver, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker who did impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

## Count LV

### Violation of State Tort Law Negligent Hiring

733. MTC was negligent in its hiring of Candy Weaver, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker for failing to uncover his vindictive personality flaws and veracity for the truth incorporated herein as alleged under the facts of the complaint.

### Count LVI

### Violation of State Tort Law Fiduciary Duty

734. MTC through respondent superior, Candy Weaver James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did have a duty not to excessively punish Welsh under false pretenses through the formal and informal relationship with Welsh incorporated herein as alleged under the facts of the complaint.

### Count LVII
### Violation of State Tort Law Libel

735. MTC through respondent superior , and Candy Weaver did make false allegations against Welsh of a defamatory nature publishing said lies in a disciplinary to bring false charges against Welsh incorporated herein as alleged under the facts of the complaint.

### Count LVIII
### Violation Of State Tort Law Abuse Of Process

736. MTC through respondent superior, Candy Weaver,  James Pearson, James Winckler, Stetson Fisher, Sahra Sooter and Wayne Schmoker did abuse the disciplinary process as part of Welsh's civil commitment order to bring about punishing Welsh under false pretenses incorporated herein as alleged under the facts of the complaint.

**Count LIX**
**Violation of The United States Fourteenth Amendment**
**Procedural Due Process Clause Punishment**

737. MTC did by policy  and,  Chris  Greenwalt,  James Pearson, James  Winckler, Stetson Fisher, Sahar Sooter  and Wayne Schmoker  did by practice violate Welsh's procedural due process as the hearing  was a shame without witnesses and bias decision maker  rights incorporated herein as alleged under the facts of the complaint.

**Count LX**
**Violation of The United States Fourteenth Amendment**
**Substantive Due Process Clause Punishment**

738. MTC did by policy and Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms incorporated herein as alleged under the facts of the complaint.

**Count LXI**
**Violation of United States Constitutional Fourteenth Amendment**
**Procedural Due Process Clause To Clinical Professional Judgment**

739. MTC did by policy and Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's procedural due process rights to professional clinical judgment as solitary

confinement for 110 days is outside professional norms incorporated herein as alleged under the facts of the complaint.

## Count LXII
## Violation of The United States Fourteenth Amendment Substantive Due Process To Clinical Professional Judgment

740.  MTC did by policy and Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms incorporated herein as alleged under the facts of the complaint.

## Count LXIII
## Violation of State Tort Law Negligent Training

741. MTC was negligent in its training of James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker in how to impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

## Count LXIV
## Violation of State Tort Law Negligent Supervision

742. MTC was negligent in its supervision of James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker who did impose disciplinary

without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

## Count LXV
## Violation of State Tort Law Negligent Hiring

743. MTC was negligent in its hiring of James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker for failing to uncover his vindictive personality flaws and veracity for the truth incorporated herein as alleged under the facts of the complaint.

## Count LXVI
## Violation of State Tort Law Fiduciary Duty

744. MTC through respondent superior, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did have a duty to excessively punish Welsh under false pretenses through the: formal and infonnal relationship with Welsh incorporated herein as alleged under the facts of the complaint.

## Count LXVII
## Violation of The United States Fourteenth Amendment
## Procedural Due Process Clause Punishment

745. Marsha McLane and MTC did by policy and, Chris Greenwalt, James Pearson, James Winckler,  Shawn Murpree, Dayton Saenz, Kevin Winslon and Wayne Schmoker did by practice violate Welsh's procedural due process as the hearing was a shame without witnesses and bias decision maker rights incorporated herein as alleged under the facts of the complaint.

## Count LXVIII

## Violation of The United States Fourteenth Amendment
## Substantive Due Process Clause Punishment

746. MTC did by policy and Chris Greenwalt, James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms incorporated herein as alleged under the facts of the complaint.


## Count LXIX
## Violation of United States Constitutional Fourteenth Amendment
## Procedural Due Process Clause To Clinical Professional Judgment

747.  MTC did by policy and Chris Greenwalt, James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker did by practice violate Welsh's procedural due process rights to professional clinical judgment as solitary confinement for 120 days is outside professional nonns incorporated herein as alleged under the facts of the complaint.


## Count LXX
## Violation of The United States Fourteenth Amendment
## Substantive Due Process To Clinical Professional Judgment

748. MTC did by policy and Chris Greenwalt, James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow    and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 120 days is outside professional norms incorporated herein as alleged under the facts of the complaint.


## Count LXXI

## Violation of State Tort Law Negligent Training

749. MTC was negligent in its training of James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker in how to impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

## Count LXXII
## Violation of State Tort Law Negligent Supervision

750. MTC was negligent in its supervision of James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker who did impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

## Count LXXIII
## Violation of State Tort Law Negligent Hiring

751. MTC was negligent in its hiring of James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker for failing to uncover his vindictive personality flaws and veracity for the truth uincorporated herein as alleged under the facts of the complaint.

## Count LXXIV
## Violation of State Tort Law Fiduciary Duty

752. MTC through respondent superior, James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schrnoker did have a duty to excessively punish Welsh under false pretenses through the formal and infmmal

relationship with Welsh incorporated herein as alleged under the facts of the complaint.

## Count LXXV
### Violation Of State Tort Law Abuse Of Process

753. MTC through respondent superior, Cames Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schrnokerdid abuse the disciplinary process as part of Welsh's civil commitment order to bring about punishing Welsh under false pretenses incorporated herein as alleged under the facts of the complaint.

## Count LXXVI
### Violation of The United States Fourteenth Amendment
### Substantive Due Process To Clinical Professional Judgment

754. MTC did by policy and , Ricardo Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 256 days is outside professional norms incorporated herein as alleged under the facts of the complaint.

## Count LXXVII
### Violation of State Tort Law Negligent Training

755. MTC was negligent in its training of Ricardo Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel, Sahar Sooter and Wayne Schmoker in how to impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

### Count LXXVII
### Violation of State Tort Law Negligent Supervision

756. MTC was negligent in its supervision of, Ricardo Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel, Sahar Sooter and Wayne Sch.maker who did impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

### Count LXXVIII
### Violation of State Tort Law Negligent Hiring

757. MTC through respondent superior , Ricardo Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel, Sahar Sooter and Wayne Schmoker for failing to uncover his vindictive personality flaws and veracity for the truth incorporated herein as alleged under the facts of the complaint.

### Count LXXIX
### Violation of State Tort Law Fiduciary Duty

758. MTC through respondent superior, Ricardo Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel, Sahar Sooter and Wayne Schmoker did have a duty not to excessively punish Welsh under false pretenses through the formal and informal relationship with Welsh incorporated herein as alleged under the facts of the complaint.

### Count LXXX

**<u>Violation Of State Tort Law Abuse Of Process</u>**

759. MTC through respondent superior, Ricardo Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel, Sahar Sooter and Wayne Schmoker did abuse the disciplinary process as part of Welsh's civil commitment order to bring about punishing Welsh under false pretenses incorporated herein as alleged under the facts of the complaint.

**<u>Count LXXXI</u>**
**<u>Violation of State Tort Law Libel</u>**

760. MTC through respondent superior,  Ricardo Nipper did make false allegations against Welsh of a defamatory nature publishing said lies in a disciplinary to bring false charges against Welsh incorporated herein as alleged under the facts of the complaint.

**<u>Count LXXXII</u>**
**<u>Violation of The United States Fourteenth Amendment</u>**
**<u>Procedural Due Process Clause Punishment</u>**

761. MTC did by policy and , Lewis  Rayos, Unknown first name S. Carrizales, Chris Gre nwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker did by practice violate Welsh's procedural due process as the hearing was a shame without witnesses and bias decision maker rights incorporated herein as alleged under the facts of the complaint.

**<u>Count LXXXIII</u>**

**Violation of United States Constitutional Fourteenth Amendment**
**Procedural Due Process Clause To Clinical Professional Judgment**

762.  MTC did by policy and , L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker did by practice violate Welsh's procedural due process rights to professional clinical judgment as solitary confinement for 30 days is outside professional norms incorporated herein as alleged under the facts of the complaint.

## Count LXXXIV
**Violation of The United States Fourteenth Amendment**
**Substantive Due Process To Clinical Professional Judgment**

763. MTC did by policy and , L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 30 days is outside professional norms incorporated herein as alleged under the facts of the complaint.

## Count LXXXVI
**Violation of State Tort Law Negligent Training**

764. MTC was negligent in its training of, L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker in how to not impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

## Count LXXXVII
**Violation of State Tort Law Negligent Supervision**

765. MTC was negligent in its supervision of L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker who did impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.


## Count LXXXVIII
### Violation of State Tort Law Negligent Hiring

766. MTC through respondent superior , L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker for failing to uncover his vindictive personality flaws and veracity for the truth incorporated herein as alleged under the facts of the complaint.


## Count XC
### Violation of State Tort Law Fiduciary Duty

767. MTC through respondent superior, L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker did have a duty not to excessively punish Welsh under false pretenses through the formal and informal relationship with Welsh incorporated herein as alleged under the facts of the complaint.


## Count XCI
### Violation Of State Tort Law Abuse Of Process

768. MTC through respondent superior, L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker did abuse the disciplinary process as part ofwelsh's civil commitment order to bring about punishing Welsh incorporated herein as alleged under the facts of the complaint.

## Count XCII
### Violation of State Tort Law Libel

769. MTC through respondent superior, Unknown first name S. Carrizales did make false allegations against Welsh of a defamatory nature publishing said lies in a disciplinary to bring false charges against Welsh incorporated herein as alleged under the facts of the complaint.

## Count XCIII
### Violation Of United States First Amendment Retaliation and Harassment

770. Adam Pierce, Chris Greenwalt, Jacquelyn Wilson, Unknown first name Aguirre and James Cruz did retaliate against Welsh for threats of legal action incorporated herein as alleged under the facts of the complaint.

## Count XCIV
### Violation of State Tort Law Negligent Training

771. MTC was negligent in its training of, Adam Pierce, and Jacquelyn Wilson, Unknown first name Aguirre and James Cruz in how to impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

## Count XCV
### Violation of State Tort Law Negligent Supervision

772.   MTC was negligent in its supervision of and Jacquelyn Wilson, Unknown first name Aguirre and James Cruz who did impose disciplinary for threats of legal action incorporated herein as alleged under the facts of the complaint.

### Count XCVI
### Violation of State Tort Law Negligent Hiring

773.   MTC through respondent superior, and Jacquelyn Wilson, Unknown first name Aguirre and James Cruz for failing to uncover their vindictive personality flaws and veracity for the truth incorporated herein as alleged under the facts of the complaint.

### Count XCVII
### Violation of State Tort Law Fiduciary Duty

774. MTC through respondent superior and Jacquelyn Wilson, Unknown first name Aguirre and James Cruz did have a duty not to excessively punish Welsh for threats of legal action through the formal and informal relationship with Welsh incorporated herein as alleged under the facts of the complaint.

### Count XCVIII
### Violation Of State Tort Law Abuse Of Process

775. MTC through respondent superior, and Jacquelyn Wilson, Unknown first name Aguine and James Cruz did abuse the disciplinary process as part of Welsh's civil commitment order to bring about punishing Welsh under false pretenses incorporated herein as alleged under the facts of the complaint.

## Count XCIX
## Violation of State Tort Law Libel

776. MTC through respondent superior, Unknown first name Aguirr e and James Cruz did make false allegations against Welsh of a defamatory nature publishing said lies in a disciplinary to bring false charges against Welsh incorporated herein as alleged under the facts of the complaint.


## Count C
## Violation of The United States Fourteenth Amendment
## Procedural Due Process Clause Punishment

777. MTC did by policy and Chris Greenwalt, Victor Guenero, Maria Weaver, Darla Jennings, Adam Pierce, and Jacquelyn Wilson did by practice violate Welsh's procedural due process as the hearing was a shame without witnesses and bias decision maker rights incorporated herein as alleged under the facts of the complaint.


## Count CI
## Violation of The United States Fourteenth Amendment
## Substantive Due Process Clause Punishment

778. MTC did by policy and Chris Greenwalt, Victor Guerrero, Maria Weaver, Darla Jennings Adam Pierce, and Jacquelyn Wilson did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 110 days is outside professional nonns incorporated herein as alleged under the facts of the complaint.


## Count CII

**<u>Violation of United States Constitutional Fourteenth Amendment</u>**
**<u>Procedural Due Process Clause To Clinical Professional Judgment</u>**

779.  MTC did by policy and, Chris Greenwalt, Victor Gue1Tero, Maria Weaver, Darla Jennings Adam Pierce, and Jacquelyn Wilson        did by practice violate Welsh's procedural due process rights to professional clinical judgment as solitary confinement for 30 days is outside professional norms        incorporated herein as alleged under the facts of the complaint.

**<u>Count CIII</u>**
**<u>Violation of The United States Fourteenth Amendment</u>**
**<u>Substantive Due Process To Clinical Professional Judgment</u>**

780.  MTC did by policy and Chris Greenwalt, Victor Guenero, Maria Weaver, Darla Jennings  Adam Pierce,  and Jacquelyn Wilson  did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 30 days is outside professional norms incorporated herein as alleged under the facts of the complaint.

**<u>Count CIV</u>**
**<u>Violation of State Tort Law Negligent Training</u>**

781.  MTC was negligent in its training of Val Gerrerro, Maria Weaver, Darla Jennings ,Adam Pierce, and Jacquelyn Wilson in how to not impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

**<u>Count CV</u>**
**<u>Violation of State Tort Law Negligent Supervision</u>**

782. MTC was negligent in its supervision of, Victor Guerrero, Maria Weaver, Darla Jennings, Adam Pierce, and Jacquelyn Wilson who did impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

## Count CVI
## Violation of State Tort Law Negligent Hiring

783. MTC through respondent superior, Victor Guerrero, Maria Weaver, Darla Jennings, Adam Pierce, and Jacquelyn Wilson for failing to uncover his vindictive personality flaws and veracity for the truth incorporated herein as alleged under the facts of the complaint.

## Count CVII
## Violation of State Tort Law Fiduciary Duty

784. MTC through respondent superior, Victor Guerrero, Maria Weaver, Darla Jennings, Adam Pierce, and Jacquelyn Wilson did have a duty not to excessively punish Welsh under false pretenses through the formal and informal relationship with Welsh incorporated herein as alleged under the facts of the complaint.

## Count CVIII
## Violation of State Tort Law Intentional Infliction of Emotional Distress

785. MTC through respondent superior, Victor Guerrero, Maria Weaver, Darla Jennings ,Adam Pierce, and Jacquelyn Wilson did through their outrageous and extreme conduct to punish Welsh by excessive punishment and under false pretenses that did inflict intense and sever emotional distress upon Welsh incorporated herein as alleged under the facts of the complaint.

## Count CIX
## Violation of State Tort Law Malicious Prosecution

786. MTC through respondent superior and Victor Guerrero, Maria Weaver, Darla Jennings did attempt to have Welsh prosecuted without probable cause incorporated herein as alleged under the facts of the complaint.

## Count CX
## Violation of United States Constitutional First Amendment

787. MTC by policy and Wayne Schmoker, John Powel and Derek Porter did by practice did violate Welsh's rights under the First Amendment incorporated herein as alleged under the facts of the complaint.

## Count CXI
## Violation of United States Constitutional
## Fourteenth Amendment Punishment

788. MTC by policy and Wayne Schmoker, John Powel and Derek Porter did by practice did violate Welsh's Fourteenth Amendment rights not to be punished by restricting the First Amendment as a punishment tool incorporated herein as alleged under the facts of the complaint.

## Count CXII
## Violation of State Tort Law Fiduciary

789. MTC through respondent superior, Wayne Schmoker and John Powel did have a duty no to violate Welsh's Foi1rteenth Amendment rights not to be punished by restricting the First Amendment as a punishment tool that they did violate through the formal and informal relationship with Welsh uincorporated herein as alleged under the facts of the complaint.

### Count CXIII
### Violation of State Tort Law Negligence

790. MTC through respondent superior, Wayne Schmoker and John did have a duty no to violate Welsh's Fourteenth Amendment rights not to be punished by restricting the First Amendment as a punishment tool incorporated herein as alleged under the facts of the complaint.

### Count CXIV
### Violation of State Tort Law Negligence Training

791. MTC did fail to train Wayne Schmoker and John Powel to no violate to violate Welsh's Fourteenth Amendment rights not to be punished by restricting the First Amendment as a punishment tool uincorporated herein as alleged under the facts of the complaint.

### Count CXV
### Violation of State Tort Law Negligence Training

792. MTC did fail to supervise Wayne Schmoker and John Powel to no violate to violate Welsh's Fourteenth Amendment rights not to be punished by restricting the First Amendment as a punishment tool uincorporated herein as alleged under the facts of the complaint.

### Count CXVI
### Violation of United States Constitutional Fourteenth Amendment Punishment

793. Wayne Schrnoker, Lisa Peralta, Kevin Winslow, and Chris Greenwalt did violate Welsh Fourteenth Amendment rights not to be punished uincorporated herein as alleged under the facts of the complaint.

## Count CXVII
## Violation Of State Tort Law Negligence

794. MTC through respondent superior, Wayne Schmoker, and Kevin Winslow were negligent in their duty to provide seamless transition to release, not to harass Welsh, and not to retaliate against Welsh for being accused of criminal activity that he was released from the county jail under the interest of justice standard incorporated herein as alleged under the facts of the complaint.

## Count CXVIII
## Violation Of State Tort Law Negligence Training

795. MTC was negligent in its training of, Wayne Schmoker, and Kevin Winslow were negligent in their duty to provide seamless transition to release, not to harass Welsh, and not to retaliate against Welsh for being accused of criminal activity that he was released from the county jail under the interest of justice standard incorporated herein as alleged under the facts of the complaint.

## Count CXIX
## Violation Of State Tort Law Negligence Supervision

796. MTC was negligent in its supervision of, Wayne Schmoker, and Kevin Winslow were negligent in their duty to provide seamless transition to release, not to harass Welsh, and not to retaliate against Welsh for being accused of criminal activity that he was released from the county jail under the interest of justice standard incorporated herein as alleged under the facts of the complaint.

## Count CXX
## Violation Of State Tort Law Negligent Hiring

797. MTC was negligent in its hiring of, Wayne Schmoker, and Kevin Winslow were negligent in their duty to provide seamless transition to release, not to harass

Welsh, and not to retaliate against Welsh for not uncovering their penitence for punishing individuals before criminal trial incorporated herein as alleged under the facts of the complaint.


## Count CXXI
## Violation Of State Tort Law Fiduciary Duty

798. MTC through respondent superior, Wayne Schmoker, and Kevin Winslow had a duty to provide seamless transition to release, not to harass Welsh, and not to retaliate against Welsh for being accused of criminal activity that he was released from the county jail under the interest of justice standard through their formal and informal relationship with Welsh incorporated herein as alleged under the facts of the complaint.


## Count CXXIII
## Violation of United States Constitutional Fourteenth Amendment
## Life Necessity

799. MTC did by policy and Wayne Schmoker, and John Powel has imposed a policy through their roles as MTC agent Unknown First name Palmer, L. Rayos , Darla Jennings, Unknown First Name Savala, Unknown First name Loyden, Unknown First Name Villarreal, Trevor Swanger, Unknown First name Sgt. Correa, Unknown First Name James Cruz, Adam Pierce, Joseph Trevino, Settles, Nurse Unknown First name Martinez, Nurse Barragan Fraser, S. Carrizales, Unknown First Name Thorne, Juan Rodriguez; Unknown first name Aguirre Unknown first name Campbell, Unknown first name Collins, Maria Weaver, Juan Rodriguez, A Batista, Unknown first name Savala, Jimmy Renfro; A. Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Richardson,

Unknown first name Follower; Ricardo Nipper, Unknown first name Sierra, Unknown first name Williams, Unknown first name Unknown first name Valenzuela  and Emma Himojosa did by practice harass Welsh day and night to prevent sleep. They have instmcted there staff to continuously slam the door day and night, keep the radio at a loud volume and refuse to prevent the staff from talking loudly all night and into the early morning right from the dates of May 17, 2022 to January 24, 2022 to deny Welsh sleep incorporated herein as alleged under the facts of the complaint.

## Count CXXIV
## Violation of United States Constitutional Fourteenth Amendment Harassment

800.  MTC did by policy  and  Wayne  Schmoker  and  John Powel has imposed a policy through their roles as MTC agent and endorsed and condoned by Matsha McLane to by Unknown First name Palmer, L. Rayos, Darla Jennings, Unknown First Name Savala, Unknown  First name  Loyden,  Unknown First Name Villarreal,  Trevor  Swanger,  Unknown  First  name  Sgt.  Correa, Unknown First Name James Cruz, Adam Pierce, Joseph Trevino, Settles, Nurse Unknown First name Martinez, Nurse  Barragan  Fraser,  S.  Carrizales,  Unknown First Name Thorne, Juan Rodriguez; Unknown first name Aguirre Unknown first name Campbell, Unknown first name Collins, Maria  Weaver,  Juan Rodriguez, Ashley Batista, Unknown first name Savala, Jimmy Renfro; A. Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Valenzuela,  Unlmown first name Richardson, Unknown  first  name  Follower;  Ricardo Nipper, Unknown first name Sierra, Unknown first name Williams and Emma Himojosa did by practice harass Welsh day and night to prevent sleep. They have instructed there staff  to

continuously slam the door day and night, keep the radio at a loud volume and refuse to prevent the staff from talking loudly all night and into the early morning right from the dates of May 17, 2022 to January 24, 2022 to harass Welsh while he tried to sleep and for complaining about the noise level incorporated herein as alleged under the facts of the complaint.

## Count CXXV
## Violation of State Tort Law Negligence

801. MTC through respondent superior Wayne Schmoker, John Powel, Unknown First name Palmer, L. Rayos , Darla Jennings, Unknown First Name Savala, Unknown First name Layden, Unknown First Name Villarreal, Trevor Swanger, Unknown First name Sgt. Correa, Unknown First Name James Cruz, Adam Pierce, Joseph Trevino, Settles, Nurse Unknown First name Martinez, Nurse Barragan Fraser, S. Carrizales, Unknown First Name Thome, Juan Rodriguez; Unknown first name Aguirre Unknown first name Campbell, Unknown first name Collins, Maria Weaver, Juan Rodriguez, Ashley Batista, Unknown first name Valenzuela, Unknown first name Savala, Jimmy Renfro; A. Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Ricardo Nipper, Unknown first name Sierra, Unknown first name Williams and Emma Himojosa did harass Welsh to prevent him from sleep incorporated herein as alleged under the facts of the complaint.

## Count CXXVI
## Violation of State Tort Law Negligence Training

802. MTC did fail to train Wayne Schmoker, John Powel, Unknown First name Palmer, L. Rayos , Darla Jennings, Unknown First Name Savala, Unknown First name Layden, Unknown First Name Villarreal, Trevor Swanger, Unknown First name Sgt. Correa, Unknown First Name James Cruz, Adam Pierce, Joseph

Trevino, Settles, Nurse Unknown First name Martinez, Unknown first name Valenzuela, Nurse Barragan Fraser, S. Carrizales, Unknown First Name Thome, Juan Rodriguez; Unknown first name Aguirre Unknown first name Campbell, Unknown first name Collins, Maria Weave1\ Juan Rodriguez, Ashley Batista, Unknown first name Savala, Jimmy Renfro; A. Sanchez; Xavier Guzman; Willie Barbosa; Ester Ottiz, Unknown first name Richardson, Unknown first name Follower; Ricardo Nipper, Unknown first name Sierra, Unknown first name Williams  and Emma Himojosa  to prevent  harassment  Welsh to prevent him from sleep incorporated herein as alleged under the facts of the complaint.

### Count CXXVII
### Violation of State Tort Law Negligence Supervision

803. MTC did fail to supervise Wayne Schmoker, John Powel, Unknown First name Palmer, L. Rayos, Darla Jennings, Unknown First Name Savala, Unknown First name Loyden, Unknown First Name Villan-eal, Trevor Swanger, Unknown First name Sgt. Correa, Unknown First Name James Cruz, Adam Pierce, Joseph Trevino, Settles, Nurse Unknown First name Martinez, Nurse Barragan Fraser, S. Carrizales, Unknown First Name Thorne, Unknown first name Valenzuela, Juan Rodriguez; Unknown first name Aguirre Unknown first name Campbell, Unknown first name Collins, Maria Weaver, Juan Rodriguez, Ashley Batista, Unknown first name Savala, Jimmy Renfro; A. Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Richardson, Unknown first name Follower; Ricardo Nipper, Unknown first name Sierra, Unknown first name Williams and Emma Himojosa  to prevent harassment  Welsh to prevent him from sleep incorporated herein as alleged incorporated herein as alleged under the facts of the complaint.

## Count CXXVIII
## Violation of State Tort Law Negligent Hiring

804. MTC was negligent in its hiring of Wayne Schmoker, John Powel, Unknown
First name Palmer, L. Rayos, Darla Jennings, Unknown First Name Savala,
Unknown First name Loyden, Unknown First Name Villarreal, Trevor Swanger,
Unknown First name Sgt. Correa, Unknown First Name James Cruz, Unknown
first name Valenzuela, Adam Pierce, Joseph Trevino, Settles, Nurse Unknown
First name Martinez, Nurse Barragan Fraser, S. Carrizales, Unknown First Name
Thorne, Juan Rodriguez; Unknown first name Aguirre Unknown first name
Campbell, Unknown first name Collins, Maria Weaver, Juan Rodriguez, Ashley
Batista, Unknown first name Savala, Jimmy Renfro; A.  Sanchez; Xavier Guzman;
Willie Barbosa; Ester Ortiz, Unknown first name Richardson, Unlmown first name
Follower; Ricardo Nipper, Unknown first name Sierra, Unknown first name
Williams and Emma Himojosa to uncover their vindictive personalities to harass
people incorporated herein as alleged under the facts of the complaint.

## Count CXXIX
## Violation of State Tort Law Fiduciary Duty

805. MTC through respondent superior Wayne Schmoker, John Powel, Unknown
First name Palmer, L. Rayos, Darla Jennings, Unknown first name Valenzuela,
Unknown First Name Savala, Unknown First name Loyden, Unknown First Name
Villarreal, Trevor Swanger, Unl<nown First name Sgt. Correa, Unknown First
Name James Cruz, Adam Pierce, Joseph Trevino, Settles, Nurse Unknown First
name Martinez, Nurse Barragan Fraser, S. Canizales, Unknown First Name
Thorne, Juan Rodriguez; Unknown first name Aguirre Unknown first name

Campbell, Unknown first name Collins, Maria Weaver, Juan Rodriguez, Ashley Batista, Unknown first name Savala, Jimmy Renfro; A. Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Richardson, Unknown first name Follower; Ricardo Nipper, Unknown first name Sierra, Unknown first name Williams and Emma Himojosa did violate their duty through their formal and informal relationship with Welsh to allow for him to sleep and not to harass him for making complaints about the noise incorporated herein as alleged under the facts of the complaint.

### Count CXXX
### Violation of State Tort Law Fiduciary Duty

806.   MTC through respondent superior, Ricardo Nipper, Emma Himojosa, and Unknown first name Sierra through their formal and informal relationship with Welsh not to conduct verbal racial hatred remarks and threats of violence incorporated herein as alleged under the facts of the complaint.

### Count CXXXI
### Violation of United States Fourteenth Amendment
### Retaliation and Harassment

807.   James Winkler, Ricardo Nipper and James Cruz did retaliate and harass Welsh by making verbal threats and racially motivated threats for Welsh's desire to file a grievance and his informing supervisors of the treats of violence and racial hatred of Nipper incorporated herein as alleged under the facts of the complaint.

### Count CXXXII
### Violation of State Tort Law Negligence

808.   MTC through respondent superior, Ricardo Nipper and James Cruz did have a duty not to harass Welsh or make racially motivated comments and threats incorporated herein as alleged under the facts of the complaint.

## Count CXXXIII
## Violation of State Tort Law Negligent Training

809.   MTC did have a duty to train Ricardo Nipper, and James Cruz not to harass not to harass Welsh or make racially motivated comments and threats incorporated herein as alleged under the facts of the complaint.

## Count CXXXIV
## Violation of State Tort Law Negligent Supervision

810.   MTC did have a duty to supervise Ricardo Nipper, and James Cruz to prevent the harass of Welsh or make racially motivated comments and threats incorporated herein as alleged under the facts of the complaint.

## Count CXXXV
## Violation of State Tort Law Negligent Hiring

811.   MTC did have a duty to uncover Ricardo Nipper, and James Cruz racial biasness and tendencies to inflict racially motivated violence incorporated herein as alleged under the facts of the complaint.

## CountCXXXVI
## Violation Of United States Fourteenth Amendment Medical Treatment

812. Unknown first name Graves, James Winckler, James Powel, A. Johnson, Robert Brunslow,  and Wayne Schmoker did purposely delay Welsh medical care for a demist appointment were hew was diagnosis to have an unsalvageable tooth,

nueropathy, a urination disorder, and requiring stiches that was abscessed causing Welsh extreme pain incorporated herein as alleged under the facts of the complaint.

## Count CXXXVII
### Violation Of United States Fourteenth Amendment Punishment

813. Unknown first name Graves, James Winckler, James Powel, A. Johnson, Robert Brunslow,  and Wayne Schmoker did purposely delay Welsh medical care for the purpose of punishing him incorporated herein as alleged under the facts of the complaint.

## Count CXXXVIII
### Violation of State Tort Law Negligence

814. MTC through respondent superior, UUnknown first name Graves, James Winckler, James Powel, A. Johnson, Robert Brunslow,  and Wayne Schmoker did have a duty to insure Welsh had timely medical care and not to be punished as they denied the ability to access a medical care incorporated herein as alleged under the facts of the complaint.

## Count CXXXIX
### Violation of State Tort Law Negligent Training

815. MTC did have a duty to train Unknown first name Graves, James Winckler, James Powel, A. Johnson, Robert Brunslow,  and Wayne Schmoker not to delay medical care for the purpose of punishment incorporated herein as alleged under the facts of the complaint.

## Count CXL
### Violation of State Tort Law Negligent Supervision

816.   MTC did have a duty to supervision UUnknown first name Graves, James Winckler, James Powel, A. Johnson, Robert Brunslow,  and Wayne Schmoker not to delay medical care for the purpose of punishment incorporated herein as alleged under the facts of the complaint.

## Court CXLI
### Violation of State Tort law Fiduciary Duty

817.   MTC through respondent superior, Unknown first name Graves, James Winckler, James Powel, A. Johnson, Robert Brunslow,  and Wayne Schmokerdid have a duty through their formal and infom1al relationship with Welsh to provide him timely medical care and not to punish him by denying medical treatment incorporated herein as alleged under the facts of the complaint.

## Count CXLII
### Violation of State Tort Law Medical Assault

818.   MTC through respondent superior, Unknown first name Graves, James Winckler, James Powel, A. Johnson, Robert Brunslow,  and Wayne Schmokerdid assault Welsh by delaying his medical care to cause him pain incorporated herein as alleged under the facts of the complaint.

## Count CXLIII
### Violation of United States Constitutional Fourteenth Amendment
### Sexual Assault

819.   Unknown first name Tuner did sexually assault Welsh by placing his hands on Welsh's genitals incorporated herein as alleged under the facts of the complaint.

## Count CXLIV
## Violation Of United States Constitutional Fourth Amendment

820.  MTC did by policy and Unknown first name Turner did by practice touch Welsh's genital area to conduct a search uincorporated herein as alleged under the facts of the complaint.

## Count CXLV

## Violation of United States Fourteenth Amendment

821.  MTC did by policy and Unknown first name Turner S. Murphree, Anthony Frasier , Ricardo Nipper, Tylor Swanger; Unknown First Name Cruz (night shift); Joseph  Trevino, Michael Perez; Unknown First Name Titus; Unknown first name Cruz(day shift); S. Carrizales; Juan Rodriguez; Unknown First Name Williams; Victor Guerrero; L. Rayos, Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Layden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown S. Carrizales,  Unknown First Name Thorne,  Unknown first name Campbell, Unknown first name Collins, Unknown first name Savala, Xavier Guzman; Unknown first name Hodge, Unknown First name McMullen, Jose Ramirez, Unknown first name Guzman and Jose Solis Unknown first name Richardson, Unknown first name Cardenas ; did by practice conduct harassing cell and pat searches several times a day incorporated herein as alleged under the facts of the complaint.

## Count CXLVI
## Violation of United States Constitutional Fourteenth Amendment Harassment

822. MTC did by policy and Unknown first name Turner

S. Murphree, Anthony Frasier , Ricardo Nipper, Tylor Swanger; Unknown First Name Cruz (night shift) ; Joseph Trevino, Michael Perez; Unknown First Name Titus; Unknown first name Cruz(day shift); S. Carrizales; Juan Rodriguez; Unknown First Name Williams; Val Gurrerro; L. Rayos, Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Lorden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown first name Hodge, Unknown First name McMullen, Jose Ramirez, Unknown first name Guzman and Jose SolisUnknown First name Cruz (night shift); A. Siena; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown First Name Thome, Unknown First name Campbell, Unknown first name Collins, Unknown first name Savala, Xavier Guzman; Unknown first name Richardson, Unknown first name Cardenas ; did by practice conduct harassing cell and pat searches several times a day to punish Welsh incorporated herein as alleged under the facts of the complaint.

### Count CXLVII
### Violation of United States Constitutional Fourteenth Amendment
### Failure To Train

823. MTC Unknown first name Turner;

S. Murphree, Anthony Frasier , Ricardo Nipper, Tylor Swanger; Unknown First Name Cruz (night shift); Joseph Trevino, Michael Perez; Unknown First Name Titus; Unlmown first name Cruz(day shift); S. Carrizales; Juan Rodriguez; Unknown First Name Williams; Victor Guerrero; L. Rayos, Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; Unknown First Name Titus; Unknown first name Hodge, Unknown First name

McMullen, Jose Ramirez, Unknown first name Guzman and Jose Solis,  Xavier

Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name

Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name

Savala, Unlmown First Name  Villarreal,  S. Carrizales, Unknown First Name

Thorne,  Unknown first name Campbell, Unknown first name Collins, Unknown

first name Savala, Xavier Guzman; Unknown first name Richardson, Unknown

first name Cardenas ; that should have included but did not include searches based

upon reasonable suspicion, not to conduct harassing searches of a cell on a daily

bases that leaves a

cell disheveled, harassing pat searches despite never leaving an officers site, and

searches for the purpose of punishment incorporated herein as alleged under the

facts of the complaint.


### Count CXLVIII
### Violation of State Tort Law Negligence Per Se Sexual Assault

824.  MTC by respondent superior; and Unknown first name Turner did have a

duty not to sexually assault Welsh by touching and fondling Welsh's private area in

accordance with Texas Penal Code 22.011 policy incorporated herein as alleged

under the facts of the complaint.


### Count CXLIX
### Violation of State Tort Law Negligence

825.  MTC by respondent superior; and Unknown first name Turner S. Murphree,

Anthony Frasier , Ricardo Nipper , Tylor Swanger; Unknown First Name Cruz

(night shift); Joseph Trevino, Michael Perez; Unknown First Name Titus;

Unlmown first name Cruz(day shift); Juan Rodriguez; Unknown First Name

Williams; Victor Guerrero; L. Rayos, Jimmy Renfro; A. Sierra; Unknown first

name Villarreal; Unknown First name Loyden; D. Saenz; Unknown First Name

Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown First Name Villarreal, S. Carrizales, Unknown First Name Thorne, Unknown first name Campbell, Unknown first name Collins, Xavier Guzman; Unknown first name Richardson, Unknown first name Hodge, Unknown First name McMullen, Jose Ramirez, Unknown first name Guzman and Jose Solis, Jose Cardenas were negligent in their duty not to conduct harassing cell and pat searches and to punish Welsh incorporated herein as alleged under the facts of the complaint.

## Count CL
## Violation of State Tort Law Negligent Training

826.  MTC was negligent in their duty to train Unknown first name Turner, S. Murphree , Anthony Frasier , Ricardo Nipper , Tylor Swanger; Unknown First Name Cruz (night shift) ; Joseph Trevino, Michael Perez; Unknown First Name Titus; Unknown first name Cruz(day shift); S. Carrizales; Juan Rodriguez; Unknown First Name Williams; Victor Guerrero; Unknown first name Hodge, Unknown First name McMullen, Jose Ramirez, Unknown first name Guzman and Jose Solis, L. Rayos, Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapa Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown First Name Villarreal, S. Carrizales, Unknown First Name Thorne, Unknown first name Campbell, Unknown first name Collins, Unknown first name Savala, Xavier Guzman; Unknown first name Richardson, Jose Cardenas to only conduct searches based upon reasonable suspicion, not to conduct harassing searches of a cell on a daily bases that leaves a cell disheveled, harassing

pat searches despite never leaving an officers site, and searches for the purpose of punishment incorporated herein as alleged under the facts of the complaint.

## Count CLI
### Violation of State Tort Law Negligent Supervision

827. MTC was negligent in their duty to supervision Unlmown first name Turner ,S. Murphree , Anthony Frasier , Ricardo Nipper , Tylor Swanger; Unknown First Name Cruz (night shift); Joseph Trevino, Michael Perez; Unknown First Name Titus; Unknown first name Cruz(day shift); Unknown first name Hodge, Unknown First name McMullen, Jose Ramirez, Unknown first name Guzman and Jose Solis,, S. Carrizales; Juan Rodriguez; Unknown First Name Williams; Victor Guerrero; L. Rayos, Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; Unknown First Name Thorne, Unknown first name Campbell, Unknown first name Collins, Unknown first name Savala, Xavier Guzman; Unknown first name Richardson, Jose Cardenas to only conduct searches based upon reasonable suspicion, not to conduct harassing searches of a cell on a daily bases that leaves a cell disheveled, harassing pat searches despite never leaving an officers site, and searches for the purpose of punishment incorporated herein as alleged under the facts of the complaint.

## Count CLII
### Violation of State Tort Law Fiduciary Duty

828. MTC through respondent superior and Unknown first name Turner did violate their duty through their formal and informal relationship not to sexually assault Welsh incorporated herein as alleged under the facts of the complaint.

## Count CLIII
## Violation of State Tort Law Fiduciary Duty

829. MTC by respondent superior; and Unknown first name Turner S. Murphree, Anthony Frasier , Ricardo Nipper, Tylor Swanger; Unknown First Name Cruz (night shift); Joseph Trevino, Michael Perez; Unknown First Name Titus; Unknown first name Cruz(day shift); Juan Rodriguez; Unknown First Name Williams; Victor Guerrero; L. Rayos, Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Lorden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown first name Hodge, Unknown First name McMullen, Jose Ramirez, Unknown first name Guzman and Jose Solis,, Unknown First Name Villarreal, S. Carrizales, Unlmown First Naine Thorne, Unknown first name Campbell, Unknown first name Collins, Unknown first name Savala, Xavier Guzman; Unknown first name Richardson, Jose Cardenas did violate their formal and informal relationship with Welsh trough their repeated harassing cell and pat searches and to punish Welsh incorporated herein as alleged under the facts of the complaint.

## CountCLIV
## Violation of State Tort Law Intentional Infliction of Emotional Distress

830. MTC by respondent superior; and Unknown first name Turner did inflict intense and sever emotional distress upon Welsh for sexually assaulting him incorporated herein as alleged under the facts of the complaint.

## Count CLV
## Violation of State Tort Law Fiduciary Duty

831. MTC by respondent superior; and Unknown first name Unknown first name Turner S. Murphree, Anthony Frasier , Ricardo Nipper, Tylor Swanger; Unknown

First Name Cruz (night shift); Unknown first name Hodge, Unknown First name McMullen, Jose Ramirez, Unknown first name Guzman and Jose Solis, Joseph Trevino, Michael Perez; Unknown First Name Titus; Unknown first name Cruz(day shift); Juan Rodriguez; Unknown First Name Williams; Victor Guerrero; L. Rayos, Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Lorden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown First Name Villarreal, S. Carrizales, Unlmown First Naine Thorne, Unknown first name Campbell, Unknown first name Collins, Unknown first name Savala, Xavier Guzman; Unknown first name Richardson, Jose Cardenas did inflict intense and

sever emotional distress by their repeated harassing cell and pat searches and to punish Welsh incorporated herein as alleged under the facts of the complaint.

## Count CLVI
### Violation of United States Constitutional Fourteenth Amendment
### Substantive Due Process Right To Treatment

832. MTC by policy and Wayne Schmoker, M. Sandoval, Kevin Winslow, Rachael Lang, Chris Greenwalt, Kara Gougler, and Lisa Peralta did violate Welsh's substantive right to have his conditions of confinement resemble the purpose to commit incorporated herein as alleged under the facts of the complaint.

## Count CLVII
### Violation of United States Constitutional Fourteenth Amendment
### State Created Liberty Interest

833. MTC by policy andWayne Schmoker, M. Sandoval, Kevin Winslow, Rachael Lang, Chris Greenwalt, Kara Gougler, and Lisa Peralta did violate Welsh's did violate Welsh's procedural due process rights in the interest created by the Texas

Health and Safety Code 841.0831 incorporated herein as alleged under the facts of the complaint.

## Count CLVIII
### Violation of State Tort Law Negligence

835. MTC through respondent superior, Wayne Schmoker, M. Sandovol, Kevin Winslow,  and Rachael Lang violated their duty to provide Welsh with therapy incorporated herein as alleged under the facts of the complaint.

## Count CLIX
### Violation Of State Tort Law Negligent Training

836. MTC through respondent superior, Wayne Schmoker, M. Sandovol, Kevin Winslow,  and Rachael Lang  in the need to provide treatment for Welsh's behavioral abnonnality incorporated herein as alleged under the facts of the complaint.

## Count CLX
### Violation of State Tort Law Negligent Supervision

837. MTC through respondent superior, Wayne Schmoker, M. Sandovol, Kevin Winslow,  and Rachael Lang  to provide treatment for welsh's behavioral abnonnality uincorporated herein as alleged under the facts of the complaint.

## Count CLXI
### Violation of State Tort Law Negligent Hiring

838. MTC was negligent in their hiring of Wayne Schmoker, M. Sandovol, Kevin Winslow,  and Rachael Lang for failing to uncover Wayne Schmoker vindictive personality to punish those in need of treatment and Rachael Lang failing to

understand professional sex offender treatment requirements incorporated herein as alleged under the facts of the complaint.

## Count CLXII
### Violation of State Tort Law Fiduciary Duty

839. MTC through respondent superior, Wayne Schmoker, M. Sandovol, Kevin Winslow,  and Rachael Lang did violate their duty to provide sex offender treatment in accordance with professional judgment and for the seamless transition for release under Texas Health and Safety Code 841.0831 a duty through their formal and informal relationship with Welsh incorporated herein as alleged under the facts of the complaint.

## Count CLXIII
### Violation of State tort Law Intentional Infliction of Emotional Distress

840. MTC through respondent superior, Wayne Schmoker, M. Sandovol, Kevin Winslow,  and Rachael Lang  did intentionally inflict sever and intense emotional distress through their outrageous and extreme conduct incorporated herein as alleged under the facts of the complaint.

## Count CLXIV
### Violation of United States Constitutional Fourteenth Amendment Retaliation

841. Chriis Greenwalt, Kara Gougler, Lisa Peralta, M. Sandovol, Kevin Winslow, Rachel Lang, did retaliate against Welsh for making bond from the Lamb County Jail by reducing his tier class when he returned to the TCCC incorporated herein as alleged under the facts of the complaint.

## Count CLXV
## Violation of United States Constitutional Fourteenth Amendment Professional Medical Judgement

842. Chriis Greenwalt, Kara Gougler, Lisa Peralta, M. Sandovol, Kevin Winslow,

Rachel Lang, did violate Welsh's rights to professional medical judgement  by

reducing his tier class when he returned to the TCCC out of retaliation and not

based upon a professional medical opinion incorporated herein as alleged under the

facts of the complaint.

## Count CLXVII
## Violation of United States Constitutional Fourteenth Amendment Procedural Due Process

843. Chriis Greenwalt, Kara Gougler, Lisa Peralta, M. Sandovol, Kevin Winslow,

Rachel Lang, did by reducing his tier class when he returned to the TCCC by

refusing to give him a procedural hearing upon his tier level that directly affects his

property and liberty interest.incorporated herein as alleged under the facts of the

complaint.

## Count CLXVIII
## Violation of State Tort Law Negligent Training

844. MTC was negligent in its training of, <u>M. Sandovol, Kevin Winslow, Rachel

Lang</u>  in how not to retaliate based upon making bond and how to exercise

professional medical judgment when treating Welsh's behavioral abnormality herein as alleged under the facts of the complaint.


## Count CLXIX
### Violation of State Tort Law Negligent Supervision

845. MTC was negligent in its supervision of M. Sandovol, Kevin Winslow, Rachel Lang who did impose retaliate based upon making bond and how to exercise professional medical judgment when treating Welsh's behavioral abnormality incorporated herein as alleged under the facts of the complaint.


## Count CLXX
### Violation of State Tort Law Negligent Hiring

846. MTC through respondent superior , M. Sandovol, Kevin Winslow, Rachel Lang for failing to uncover his vindictive personality flaws by retaliating against Welsh incorporated herein as alleged under the facts of the complaint.


## Count CLXXI
### Violation of State Tort Law Fiduciary Duty

847. MTC through respondent superior, M. Sandovol, Kevin Winslow, Rachel Lang did have a duty not to excessively punish Welsh under false pretenses through the formal and informal relationship with Welsh incorporated herein as alleged under the facts of the complaint.

**Count CLXXII**
**Violation of United States Fourteenth Amendment Due Process**

848. MTC did by policy, Pittock, Sandoval, Winslow. Greenwalt, Pierce. Winckler, Schmoker, Powel, A. Johnson, did violate Welsh's procedural due process rights by refusing to allow him to attend disciplinary hearings, give a statement in defense, present witness statements or question the charging officer incorporated herein as alleged under the facts of the complaint.

**Count CLXIII**
**Violation of United States Fourteenth Amendment**
**Professional Medical Judgement**

849. MTC did by policy, Pittock, M. Sandoval, K. Winslow. Greenwalt, Pierce. Winckler, Schmoker, Powel, A. Johnson, J. Wilson, D. Shelby,  did violate Welsh's procedural and substantive due process rights by failing to provide disciplinary through a professional medical opinion within accepted medical standards incorporated herein as alleged under the facts of the complaint.

**Count  CLXXIV**
**Violation of State Tort Law Negligent Training**

850. MTC was negligent in its training of Pittock, Sandoval, Winslow, Pierce, Winckler, Schmoker, Powel, A. Johnson in how to procedural and substantive due process rights by refusing to allow him to attend disciplinary hearings, give a

statement in defense, present witness statements or question the charging officer, and to provide professional medical opinions at the disicpinary hearing within accepted professional standards incorporated herein as alleged under the facts of the complaint herein as alleged under the facts of the complaint.

### Count CLXXV
### Violation of State Tort Law Negligent Supervision

851. MTC was negligent in its supervision of , Pittock, Sandoval, Winslow. Greenwalt, Pierce.Winckler, Schmoker, Powel, A. Johnson who did impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

### Count CLXXVI
### Violation of State Tort Law Negligent Hiring

852. MTC was negligent in its hiring of , Pittock, Sandoval, Winslow. Greenwalt, Pierce.Winckler, Schmoker, Powel, A. Johnson for failing to uncover his vindictive personality flaws incorporated herein as alleged under the facts of the complaint.

### Count CLXXVII
### Violation of State Tort Law Fiduciary Duty

853. MTC through respondent superior, Pittock, Sandoval, Winslow. Greenwalt, Pierce.Winckler, Schmoker, Powel, A. Johnson did have a duty not to excessively punish Welsh and allow him to attend disciplinary hearings where he would be allowed to present evidence and question witnesses  through the formal and

informal relationship with Welsh incorporated herein as alleged under the facts of the complaint.

## Count XLVI
### Violation Of State Tort Law Abuse Of Process

854. MTC through respondent superior,  Pittock, Sandoval, Winslow. Greenwalt, Pierce, Winckler, Schmoker, Powel, A. Johnson did abuse the disciplinary process as part of Welsh's civil commitment order to bring about punishing Welsh under false pretenses incorporated herein as alleged under the facts of the complaint.

## Count CLXXVIII
### Violation of the United States Fourteenth Amendment
### Constitutional  Retaliation

855. MTC did by policy, Wayne Schmoker, A. Johnson, S. Murphree, Unknown First name Jeroldo, James Winckler, Darla Jennings, Chris Greenwalt, Kara Gougler,  Douglas Radford, Janet Carpenter, and Lisa Peralta did retaliate against Welsh for making bond from the Lamb County Jail for writing communication forms and grievances as a result of the retaliation that destroyed Welsh's legal work, his legal affidavits, removed contact with his family which included all phone, letters, and visitation, 24 hour lockdown, denial of recreation, the constant restraints when Welsh left the cell, denied reading books, denial of shoes, denial of hygiene, feed him differently than all others in solitary confinement the false disciplinary cases that included a 180 day package restriction, denial of group treatment, denial of phone, ability to write letters, visitation and denial of access to

a law library Welsh stopped trying to inform others of the death of Larry Johnson and will never bond out from the county jail and return to the TCCC facility pending criminal charges and stopped writing grievances incorporated herein as alleged under the facts of the complaint herein as alleged under the facts of the complaint.

### Count CLXXIX
### Violation of United States Fourteenth Amendment
### Professional Medical Judgement

856. MTC did by policy, Wayne Schmoker, A. Johnson, James Winckler, Darla Jennings, Chris Greenwalt, Kara Gougler, S. Murphree, Unknown First name Jeroldo, Douglas Radford, Janet Carpenter, and Lisa Peralta did prevent Welsh from having professional medical judgment when they destroyed Welsh's legal work, his legal affidavits, removed contact with his family which included all phone, letters, and visitation, 24 hour lockdown, denial of recreation, the constant restraints when Welsh left the cell, denied reading books, denial of shoes, denial of hygiene, feed him differently than all others in solitary confinement the false disciplinary cases that included a 180 day package restriction, denial of group treatment, denial of phone, ability to write letters, visitation and denial of access to a law library Welsh stopped trying to inform others of the death of Larry Johnson

and will never bond out from the county jail and return to the TCCC facility

pending criminal charges and stopped writing grievances incorporated herein as

alleged under the facts of the complaint herein as alleged under the facts of the

complaint.


### Count CLXXX
### Violation of the United States Fourteenth Amendment
### Punishment

857. MTC did by policy, Wayne Schmoker, A. Johnson, S. Murphree, Unknown

First name Jeroldo, James Winckler, Darla Jennings, Chris Greenwalt, Kara

Gougler,  Douglas Radford, Havier Ramirez, Unknown First name Hodge,

Unknown First name Correa,  Janet Carpenter, and Lisa Peralta did punish Welsh

both by denying procedural due process and subutantivelly by being more than de

minimis punishment  for making bond from the Lamb County Jail and writing

declarations on the  death of Larry Johnson for writing communication forms and

grievances as a result of the retaliation that destroyed Welsh's legal work, his legal

affidavits, removed contact with his family which included all phone, letters, and

visitation, 24 hour lockdown, denial of recreation, the constant restraints when

Welsh left the cell, denied reading books, denial of shoes, denial of hygiene, feed

him differently than all others in solitary confinement the false disciplinary cases

that included a 180 day package restriction, denial of group treatment, denial of

phone, ability to write letters, visitation and denial of access to a law library

incorporated herein as alleged under the facts of the complaint herein as alleged under the facts of the complaint.

## Count CLXXXI

### Violation of United States First Amendment Association

858. MTC did by policy, Wayne Schmoker, A. Johnson, James Winckler, Chris Greenwalt, Kara Gougler,  and Lisa Peralta, did prevent Welsh from having assosiaction by  removing  contact with his family which included all phone, letters, and visitation, incorporated herein as alleged under the facts of the complaint herein as alleged under the facts of the complaint.

## Count CLXXXII
### Violation of State Tort Law Negligent Training

859. MTC was negligent in its training of  Wayne Schmoker, S. Murphree, Unknown First name Jeroldo A. Johnson, James Winckler, Darla Jennings, Douglas Radford, Havier Ramirez, Unknown First name Hodge, Unknown First name Correa,   Janet Carpenter, did in how to procedural and substantive due

process rights for making bond from the Lamb County Jail and writing

declarations on the  death of Larry Johnson for writing communication forms and

grievances as a result of the retaliation that destroyed Welsh's legal work, his legal

affidavits, removed contact with his family which included all phone, letters, and

visitation, 24 hour lockdown, denial of recreation, the constant restraints when

Welsh left the cell, denied reading books, denial of shoes, denial of hygiene, feed

him differently than all others in solitary confinement the false disciplinary cases

that included a 180 day package restriction, denial of group treatment, denial of

phone, ability to write letters, visitation and denial of access to a law library

incorporated herein as alleged under the facts of the complaint herein as alleged

under the facts of the complaint.


### Count CLXXXIII
### Violation of State Tort Law Negligent Supervision

860. MTC was negligent in its supervision of , Wayne Schmoker, A. Johnson,

James Winckler, Darla Jennings, Douglas Radford, S. Murphree, Unknown First

name Jeroldo, Havier Ramirez, Unknown First name Hodge, Unknown First name

Correa,    Janet Carpenter, did in how to procedural and substantive due process

rights for making bond from the Lamb County Jail and writing declarations on the

death of Larry Johnson for writing communication forms and grievances as a result

of the retaliation that destroyed Welsh's legal work, his legal affidavits, removed

contact with his family which included all phone, letters, and visitation, 24 hour

lockdown, denial of recreation, the constant restraints when Welsh left the cell,

denied reading books, denial of shoes, denial of hygiene, feed him differently than

all others in solitary confinement the false disciplinary cases that included a 180

day package restriction, denial of group treatment, denial of phone, ability to write

letters, visitation and denial of access to a law library incorporated herein as

alleged under the facts of the complaint herein as alleged under the facts of the

complaint.

### Count CLXXXIV
### Violation of State Tort Law Negligent Hiring

861. MTC was negligent in its hiring of , Wayne Schmoker, A. Johnson, S.

Murphree, Unknown First name Jeroldo, James Winckler, Darla Jennings, Douglas

Radford, Havier Ramirez, Unknown First name Hodge, Unknown First name

Correa,   Janet Carpenter, did that failed to uncover their vindictive personality

flaws when they did retaliate against Welsh for exercising his  rights for making

bond from the Lamb County Jail and writing declarations on the  death of Larry

Johnson for writing communication forms and grievances as a result of the

retaliation that destroyed Welsh's legal work, his legal affidavits, removed contact with his family which included all phone, letters, and visitation, 24 hour lockdown, denial of recreation, the constant restraints when Welsh left the cell, denied reading books, denial of shoes, denial of hygiene, feed him differently than all others in solitary confinement the false disciplinary cases that included a 180 day package restriction, denial of group treatment, denial of phone, ability to write letters, visitation and denial of access to a law library incorporated herein as alleged under the facts of the complaint herein as alleged under the facts of the complaint.

## Count CLXXXV
## Violation of State Tort Law Fiduciary Duty

862. MTC through respondent superior, Wayne Schmoker, Steston Fisher A. Johnson, James Winckler, Darla Jennings, Douglas Radford, Havier Ramirez, Unknown First name Hodge, Unknown First name Correa, S. Murphree, Unknown First name Jeroldo, Janet Carpenter, did have a duty not to Welsh not to retaliate for exercising his rights for making bond from the Lamb County Jail and writing declarations on the death of Larry Johnson for writing communication forms and grievances as a result of the retaliation that destroyed Welsh's legal work, his legal affidavits, removed contact with his family which included all phone, letters, and visitation, 24 hour lockdown, denial of recreation, the constant restraints when Welsh left the cell, denied reading books, denial of shoes, denial of hygiene, feed him differently than all others in solitary confinement the false disciplinary cases that included a 180 day package restriction, denial of group treatment, denial of phone, ability to write letters, visitation and denial of access to a law library

through their formal and informal relationship with Welsh incorporated herein as alleged under the facts of the complaint herein as alleged  under the facts of the complaint.

## Count CLXXXVI
## Violation of United States Fourteenth Amendment
## Professional Medical Judgement

863. MTC did by policy, Pittock, Sandoval, Winslow, Sooter, and Lang did violate Welsh's procedural and substantive due process rights by failing to provide disciplinary through a professional medical opinion within accepted medical standards incorporated herein as alleged under the facts of the complaint.

## Count CLXXXVII
## Violation of State Tort Law Negligent Training

864. MTC was negligent in its training of  MTC did by policy, Pittock, Sandoval, Winslow, Sooter, and Lang did violate Welsh's procedural and substantive due process rights to professional medical judgment  by failing to provide disciplinary

through a professional medical opinion within accepted medical standards

incorporated herein as alleged under the facts of the complaint

## Count CLXXXVIII
### Violation of State Tort Law Negligent Supervision

865. MTC was negligent in its supervision of , Pittock, Sandoval, Winslow, Sooter, and Lang who did impose disciplinary without procedural due process and did violate Welsh's substantive rights incorporated herein as alleged under the facts of the complaint.

## Count CLXXXIX
### Violation of State Tort Law Negligent Hiring

866. MTC was negligent in its hiring of , Pittock, Sandoval, Winslow, Sooter, and Lang for failing to uncover his vindictive personality flaws incorporated herein as alleged under the facts of the complaint.

## Count CLXXXX
### Violation of State Tort Law Fiduciary Duty

867. MTC through respondent superior, Pittock, Sandoval, Winslow, Sooter, and Lang did have a duty not to excessively punish Welsh and allow him to attend disciplinary hearings where he would be allowed to present evidence and question witnesses  through the formal and informal relationship with Welsh incorporated herein as alleged under the facts of the complaint.

## Count CXCI
### Violation of the United States Fourteenth Amendment Excessive Force

868. James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and

Unknown Name did use excessive force by using intermidiate force instead of skill

and physical manuvers incorporated herein as alleged under the facts of the

complaint.

## Count CXCII
### Violation of the United States Constitutional
### Fourteenth Amendment Punishment

869.   MTC did by the use of force policy James Winckler, Z. Salavar, Adam

Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name did by practice punish

Welsh by the use of the chemical spray incorporated herein as alleged under the

facts of the complaint.

## Count CXCIII
### Violation of the United States Constitutional
### Fourteenth Professional Medical Judgment

870.   James Winkler did punish Welsh when he refused to allow him to

decontaminate his body from the OC spray and shutting off his water incorporated

herein as alleged under the facts of the complaint.

## Count CXCIV
### Violation of the United States Constitutional Fourteenth Amendment
### State Created Liberty Interest

871.   MTC did by the use of force policy and James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name did by practice violate Welsh's rights under the Texas Health and Safety Code 841.0838 and MTC/TCCO contract incorporated herein as alleged under the facts of the complaint.

### Count CXCV
### Violation of the United States Fourteen Amendment
### Professional Judgment For The Use Of Restraints

872.   MTC did by the use of force policy and James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name did by practice violate Welsh' s substantive right to the use of professional clinical judgment before the application of chemical restraints incorporated herein as alleged under the facts of the complaint.

### Count CXCVI
### Violation of the United States Constitutional Fourteenth Amendment
### Failure to Train

873 .   MTC failed to train and supervise James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name in the obvious need that OC spray a weapon and intermediate force should of included recognizing when to use OC spray as a last resort and necessary to stop or prevent imminent physical harm to another person and to use ascending force to first use skill in maneuvers to gain compliance from passive aggressive SVP committed individuals incorporated herein as alleged under the facts of the complaint.

## Count CXCVII
### Violation of State Tort Law Assault Causing Bodily Injury

874.   MTC through respondent superior, James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name did assault Welsh causing bodily injury in accordance with Texas Penal Code 22.0l(a)(l) under the facts of the complaint

## Count CXCVIII
### Violation of State Tort Law Assault By Threat

875.   James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name did make the threat to use OC spray and force against welsh that Pearson carried out in accordance to Texas Penal Code 22.0l(a)(2) incorporated herein as alleged under the facts of the complaint.

## Count CXCVIX
### Violation of State Tort Law Assault by Offensive Physical Contact

876.   MTC through respondent superior, James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name did assault Welsh in accordance to Texas Penal Code 22.0l(a)(3) incorporated herein as alleged under the facts of the complaint.

## Count CC
### Violation of State Tort Law Negligence

877.   MTC through respondent superior, James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name were negligent in their duty to apply the MTC/TCCO contract use of force provision incorporated herein as alleged under the facts of the complaint.

## Count CCI
### Violation of State Tort Law Negligence Per Se

878.  MTC through respondent superior, James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name were negligent in their duty to apply the Texas Health and Safety Code 841,0838 incorporated herein as alleged under the facts of the complaint.

## Count CCII
### Violation of State Tort Law Negligent Training

879. MTC was negligent in their training of James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name were negligent in their duty to train their employees under the MTC/TCCO contract use of force provision incorporated herein as alleged under the facts of the complaint.

## Count CCIII
### Violation of State Tort Law Negligent Supervision

880. MTC was negligent in their supervision of James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name were negligent in their duty to supervise their employees under the MTC/TCCO contract use of force provision incorporated herein as alleged under the facts of the complaint.

## Count CCIV
### Violation of State Tort Law Negligent Training

881.  MTC was negligent in their training of James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name were negligent in their duty to train their employees under Texas Health and Safety Code 841,0838 incorporated herein as alleged under the facts of the complaint.

**Count CCV**
**Violation of State Tort Law Negligent Supervision and Hiring**

882.   MTC was negligent in their supervision of James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name were negligent in their duty to supervise their employees under the Texas Health and Safety Code 841.0838 incorporated herein as alleged under the facts of the complaint.

**Count CCVI**
**Violation of State Tort Law Fiduciary Duty**

883.   MTC through respondent superior, James Winckler, Z. Salavar, Adam Pierce, V. Gurrerro, Jose Ramirez, and Unknown Name did assault Welsh did violate its fiduciary duty to Welsh both formal and informal to follow the MTC/TCCO contract use of force provision, to follow the Texas Health and Safety code 841.0838, not to use excessive force, not to assault Welsh and to allow him to decontaminate incorporated herein as alleged under the facts of the complaint.

## Count CCVII
### Violation of United States Constitutional Fourteenth Amendment Retaliation

884. Darla Jennings and Havier Ramirez did retaliate against Lonnie Kade Welsh

by purposely destroying his Playstation 3 making it inoperable because Welsh

desired to retain his personal property and not donate said property to a children's

home incorporated herein as alleged under the facts of the complaint.

## Count CCVIII
### Violation of United States Constitutional Fourteenth Amendment Substantive Due Process Rights Property

885. Darla Jennings and Haver Ramirez did deny Lonnie Kade Welsh the use and

enjoyment of his property  by purposely destroying his Playstation 3 making it

inoperable because Welsh desired to retain his personal property and not donate

said property to a children's home incorporated herein as alleged under the facts of

the complaint.

## Count CCIX
### Violation of State Tort Law Negligence

886.   MTC through respondent superior, Darla Jennings and Haver Ramirez were

negligent in their duty not to destroy his Playstation 3 making it inoperable because

Welsh desired to retain his personal property and not donate said property to a

children's home incorporated herein as alleged under the facts of the complaint.

## Count CCX
## Violation of State Tort Law Negligent Training

887. MTC was negligent in their training of Darla Jennings and Haver Ramirez not

to destroy his Playstation 3 making it inoperable because Welsh desired to retain

his personal property and not donate said property to a children's home that would

require training in Playstation 3's hardware and how to package and ship property

incorporated herein as alleged under the facts of the complaint.

## Count CCXI
## Violation of State Tort Law Negligent Supervision

888. MTC was negligent in their supervision of Darla Jennings and Haver Ramirez

Ramirez not to destroy his Playstation 3 making it inoperable because Welsh

desired to retain his personal property and not donate said property to a children's

home that would require training in Playstation 3's hardware and how to package

and ship property incorporated herein as alleged under the facts of the complaint.

## Count CCXII
## Violation of State Tort Law Negligent Hiring

889.   MTC was negligent in their hiring  of Darla Jennings and Haver Ramirez for

not uncovering their vindictive personality flaws herein as alleged under the facts

of the complaint.

### Count CCXIII
### Violation of State Tort Law Fiduciary Duty

890.   MTC through respondent superior, Darla Jennings and Haver Ramirez did

violatetheir fiduciary duty to Welsh both formal and informal to not to destroy his

Playstation 3 making it inoperable because Welsh desired to retain his personal

property and not donate said property to a children's home that would require

training in Playstation 3's hardware and how to package and ship property

incorporated herein as alleged under the facts of the complaint.

### Count CCXIV
### Violation of the United States Fourteenth Amendment Punishment

891.   MTC policies did have a mutually enforcing effect by the totality of the

conditions of confinement incorporated herein as alleged under the facts of the

complaint.

### Count CCXV
### Violation of Procedural and Substantive Due Process Property

892. MTC did by policy and Wayne Schmoker did confiscate Welsh's personal;

property without procedural due process consisting of hygiene to include lotion,

soap, shampoo, hair conditioner, and hair pomade, and food items include 9 bags

of coffee at a price of $8.25 each 20 bags of tuna at a price of $2.50 each, bottle of

hot salsa at a price of $5.25, 1 Peanut Butter Jar at a price of $3.50 confiscation of

Welsh MP4 player valued at $100 and T.V. valued at $100 without any procedural

due process and violated Welsh's substantive rights by denying him the use and enjoyment of said property incorporated herein as alleged under the facts of the complaint.

## Count CCXV
## State Law Tort Conversion

893. MTC by respondent superior and Wayne Schmoker did convert plaintiff's personal property by exercising dominion and control over Welsh's personal property 9 bags of coffee at a price of $8.25 each 20 bags of tuna at a price of $2.50 each, bottle of hot salsa at a price of $5.25, 1 Peanut Butter Jar at a price of $3.50 confiscation of Welsh MP4 player valued at $100 and T.V. valued at $100 incorporated herein as alleged under the facts of the complaint.

## Count CCXVI

## Violation of State Tort Law Negligence

894. MTC by respondent superior and Wayne Schmoker were negligent in their actions to confiscate Welsh's personal property 9 bags of coffee at a price of $8.25 each 20 bags of tuna at a price of $2.50 each, bottle of hot salsa at a price of $5.25, 1 Peanut Butter Jar at a price of $3.50 confiscation of Welsh MP4 player valued at

$100 and T.V. valued at $100 incorporated herein as alleged under the facts of the complaint.

## Count CCXVII
## Violation of State Tort Law Negligence Training

895. MTC was negligent in its training of Wayne Schmoker failing to train him not to steal personal property as MTC and Schmoker had no authority to take 9 bags of coffee at a price of $8.25 each 20 bags of tuna at a price of $2.50 each, bottle of hot salsa at a price of $5.25, 1 Peanut Butter Jar at a price of $3.50 confiscation of Welsh MP4 player valued at $100 and T.V. valued at $100 incorporated herein as alleged under the facts of the complaint.

## Count CCXVIII
## Violation of State Tort Law Negligence Hiring

896. MTC was negligent in its hiring of Wayne Schmoker by failing to uncover it character traits that makes him want to steal personal property as MTC and Schmoker had no authority to take 9 bags of coffee at a price of $8.25 each 20 bags of tuna at a price of $2.50 each, bottle of hot salsa at a price of $5.25, 1 Peanut Butter Jar at a price of $3.50 confiscation of Welsh MP4 player valued at $100 and T.V. valued at $100 incorporated herein as alleged under the facts of the complaint.

## Count CCXIX
## Violation of United States Fourteenth Amendment
## State Created Liberty Interest

897.  MTC have by their disciplinary policies and their property restriction tier housing policies denied Welsh procedural process in the State created liberty interest of Texas Constitution to Art. I Sec. 13 and Art. I Sec. 15 for the deprivation of his civil rights incorporated herein as alleged under the facts of the complaint.

## VII.  Prayer For Relief

898.  Lonnie Kade Welsh seeks from Chris Greenwalt in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

899.  Lonnie Kade Welsh seeks from Management and Training Corporation in its individual capacity naming Sergio Molina as principal agent for  compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

900.   Lonnie Kade Welsh seeks from Wayne Schmoker in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

901.   Lonnie Kade Welsh seeks from John Powel in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

902.   Lonnie Kade Welsh seeks from Adam Pierce in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

903.   Lonnie Kade Welsh seeks from James Flick in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

904.   Lonnie Kade Welsh seeks from Lisa Peralta in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

905.   Lonnie Kade Welsh seeks from Sahar Sooter in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

906.   Lonnie Kade Welsh seeks from Kevin Winslow in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

907.   Lonnie Kade Welsh seeks from James Winckler in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

908.   Lonnie Kade Welsh seeks from S. Murphree in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

909.   Lonnie Kade Welsh seeks from Zachary Salavar in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

910.   Lonnie Kade Welsh seeks from Anthony Frasier in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

911.   Lonnie Kade Welsh seeks from Dayton Saenz in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

912.   Lonnie Kade Welsh seeks from Ricardo Nipper in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

913.   Lonnie Kade Welsh seeks from Tylor Swanger in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

914.   Lonnie Kade Welsh seeks from Unknown First Name Cruz (night shift) in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

915.   Lonnie Kade Welsh seeks from James Cruz in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

916.   Lonnie Kade Welsh seeks from Joseph Trevino in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

917.   Lonnie Kade Welsh seeks from Michael Perez in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

918.   Lonnie Kade Welsh seeks from Unknown First Name Titus in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

919.   Lonnie Kade Welsh seeks from Xavier Guzman in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

920. Lonnie Kade Welsh seeks from S. Carrizales in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

921. Lonnie Kade Welsh seeks from Lewis Rayos in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

922. Lonnie Kade Welsh seeks from Known First Name Hodge in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

923. Lonnie Kade Welsh seeks from Jacquelyn Wilson
in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

924. Lonnie Kade Welsh seeks from Havier Ramierz
in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.
925. Lonnie Kade Welsh seeks from Unknown First name Guzman (night shift Sgt.) in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

926. Lonnie Kade Welsh seeks from Unknown First name Pittock in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

927. Lonnie Kade Welsh seeks from Unknown First name McMullen in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

928. Lonnie Kade Welsh seeks from Unknown First name Cruz (day shift) in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

927. Lonnie Kade Welsh seeks from Jose Ramirez in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

928. Lonnie Kade Welsh seeks from Kara Gougler in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

929. Lonnie Kade Welsh seeks from Dayton Saenz in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

931. Lonnie Kade Welsh seeks from Unknown First Name Williams in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

932. Lonnie Kade Welsh seeks from Ashley Batista in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

933. Lonnie Kade Welsh seeks from Darla Jennings in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

934. Lonnie Kade Welsh seeks from Unknown first name  Savala in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

935. Lonnie Kade Welsh seeks from
Jimmy Renfro in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

936. Lonnie Kade Welsh seeks from Unknown first name
A. Sierra in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

937. Lonnie Kade Welsh seeks from
Chapo  Rodriguez in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

938. Lonnie Kade Welsh seeks from

Candy Weaver in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

939. Lonnie Kade Welsh seeks from Willie Barbosa in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

940. Lonnie Kade Welsh seeks from
Angelina Johnson in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

941. Lonnie Kade Welsh seeks from Jose Solis in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

942. Lonnie Kade Welsh seeks from Robert Brunslow in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

943. Lonnie Kade Welsh seeks from Tiffany Graves in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

944. Lonnie Kade Welsh seeks from D. Selby in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

945. Lonnie Kade Welsh seeks from Unknown first name Correa in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

946. Lonnie Kade Welsh seeks from Unknown First name Villarreal in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

947. Lonnie Kade Welsh seeks from Unknown First name Loyden in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

948. Lonnie Kade Welsh seeks from Ester Ortiz in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

949. Lonnie Kade Welsh seeks from Unknown First name Follower in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

950. Lonnie Kade Welsh seeks from Unknown First name Settles in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

951. Lonnie Kade Welsh seeks from Emma Hinojosa in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

952. Lonnie Kade Welsh seeks from Emma Hinojosa in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

953. Lonnie Kade Welsh seeks from James Pearson in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

954. Lonnie Kade Welsh seeks from Kendrick Fennel in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

955. Lonnie Kade Welsh seeks from Unknown first name Thorne in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

956. Lonnie Kade Welsh seeks from Unknown first name Nurse Martinez in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

957. Lonnie Kade Welsh seeks from Unknown first name Valenzuela in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

958. Lonnie Kade Welsh seeks from Unknown first name Nurse Barragan in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

959. Lonnie Kade Welsh seeks from Unknown first name Richardson in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

960. Lonnie Kade Welsh seeks from Unknown First name Turner in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

961. Lonnie Kade Welsh seeks from Jose Cardenas in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

962. Lonnie Kade Welsh seeks from Unknown first name Clumin his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

963. Lonnie Kade Welsh seeks from Janet Carpenter in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

964. Lonnie Kade Welsh seeks from Val Gurrerro in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

965. Lonnie Kade Welsh seeks from Rebecca Lang in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

966. Lonnie Kade Welsh seeks from Unknown first name Jeroldo in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

967. Lonnie Kade Welsh seeks from M. Sandoval in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

968. Lonnie Kade Welsh seeks from Stetson Fisher in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

# VIII. Pre and Post Judgment Interest

969. Welsh seeks pre and post judgment interest.

# IX. Jury Trial

970. Plaintiff demands is United States Constitutional Seventh Amendment right to trial by jury and under 28 U.S.C § 1861.

# X. Court Cost and Attorney Fees

971. Welsh prays for all court cost for trial of the cause and attorney fees under 42 U.S.C. § 1988(b) and § 1988(c) to be assessed against the defendants.

# XI. Conclusion

972. Wherefore, premise is considered, plaintiff prays for all relief asked for or otherwise entitled in law and equity.

Respectfully Submitted,

Lonnie Kade Welsh
2600 S. Sunset Ave.
Littlefield, Tx 79339

## XIII. VERIFICATION

973.  I have read the foregoing complaint and hereby verify that the matters alleged therein are true, I certify under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

**Executed on the 1ˢᵗ  day of March 2024**

**Respectfully Submitted, and Signature of Declarant**

**Lonnie Kade Welsh**

**2600 South Sunset Ave.**

**Littlefield, Tx 79339**

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

 

**UNITED STATES POSTAL SERVICE** ®

PR

This package is made from post-consumer waste. Please recycle – again.

■ Expected delivery date specified for domestic use.
■ Domestic shipments include $100 of insurance (restrictions
■ USPS Tracking® service included for domestic and many in
■ Limited international insurance.**
■ When used internationally, a customs declaration form is re

*Insurance does not cover certain items. For details regarding claims exclu
Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and lim

## FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

## TRACKED ■ INSURED

PS00901000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

RECEIVED
MAR - 7 2024
DISTRICT COURT
DISTRICT OF TEXAS

To sche

---

US POSTAGE & FEES PAID
3 LB PRIORITY MAIL RATE
ZONE 1 NO SURCHARGE
ComBasePrice

0829001460054
9745444
FROM 79339

05/04/2024

**USPS PRIORITY MAIL** ®        **0003**

Lonnie Kade Welsh
6516607
2600 S Sunset
LITTLEFIELD TX 79339

SHIP
TO:   U.S. DISTRICT COURT
      1205 TEXAS AVE RM 209
      LUBBOCK TX 79401-4027

**USPS TRACKING #**

9405 5112 0620 4943 1594 99

The packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.